STATE OF CONNECTICUT *v.* VIOLA CRUMBLE
(8298)

DUPONT, C. J., SPALLONE and DALY, Js.

58

Argued September 11, 1990—decision released February 5, 1991

*John R. Williams,* with whom, on the brief, was *D. Kirt Westfall,* for the appellant (defendant).

*Marjorie Allen Dauster,* deputy assistant state's attorney, with whom, on the brief, were *C. Robert Satti, Sr.,* state's attorney, and *Marcia Pillsbury,* deputy assistant state's attorney, for the appellee (state).

SPALLONE, J. The defendant was convicted, after a jury trial, of the crimes of assault in the third degree in violation of General Statutes § 53a-61 and cruelty to persons in violation of General Statutes § 53-20. On appeal, the defendant claims that the trial court improperly (1) struck the testimony of one of the defendant's witnesses, Beverly Grundy, (2) denied the defendant's motion to dismiss which claimed that the state failed to disclose exculpatory material, (3) excluded evidence of bias, (4) excluded impeachment evidence, and

(5) excluded documentary evidence for failing to satisfy the business records exception to the hearsay rule. We affirm the judgment of the trial court.

On the basis of the evidence presented at trial, the jury could have reasonably found the following facts. During April and May of 1987, Viola Crumble, Elona Romeo and Sally Booth were employed as mental retardation workers in unit 305 at the Seaside Regional Center (Seaside), a residence for mentally handicapped persons. Mental retardation workers are responsible for the care of clients at the center. The victim, Elizabeth DeJesus, was a client in unit 305 during April and May of 1987. She is nonverbal, nonambulatory and aggressive. The charges in this case stem from two incidents involving the defendant and DeJesus that occurred on April 22 and May 23, 1987, at Seaside.

On the morning of April 22, 1987, Romeo was in the day hall at Seaside with DeJesus and another client. Romeo observed the defendant enter the room and begin "wrestling and antagonizing" DeJesus, who was trying to get away. The defendant took the victim's hand, put it in the victim's mouth and directed her to bite it. When DeJesus would not bite, the defendant said "I'll fix you" and proceeded to bite the victim's hand herself.

On the morning of May 23, 1987, Romeo and Booth observed DeJesus assault Jackie Coombs, a helpless fifty-two year old client with Down's syndrome. After escorting Coombs out of the room, Romeo observed the defendant grab DeJesus, drag her into a nearby bedroom and shut the door. Booth then observed the defendant kicking DeJesus, who was on the floor. Booth intervened, and the defendant left the room.

In November of 1987, Romeo reported the defendant's assaults on DeJesus to the police. On December 21, 1987, Crumble was arrested. She entered pleas

of not guilty. After trial, the defendant was convicted of cruelty to persons and assault in connection with the April 22 incident, and of assault in connection with the May 23 incident. This appeal followed.

I

The defendant first challenges the trial court's decision to strike the testimony of Beverly Grundy. The following facts are pertinent to the defendant's claim. At the beginning of the trial, defense counsel requested, and the trial court granted, an order "that the witnesses be instructed not to discuss their testimony as amongst themselves, at any point in time." The trial court instructed counsel to inform their witnesses of the order and reminded counsel that it was their responsibility to see to it that their witnesses did not violate the court order and to let the court know immediately of any violations.

The defendant called Grundy, a nurse at Seaside in unit 305 until March of 1987. Grundy testified that DeJesus was violent, had injured herself on previous occasions and had bitten herself while trying to bite Grundy. Grundy also described staff training in techniques for restraining violent patients.

On cross-examination, Grundy stated that the defendant telephoned her at home on Saturday or Sunday of the prior weekend, after the trial had begun and after the entry of the sequestration order. Grundy testified that she asked the defendant how the court case was going, who was in court for each side, who testified, and when she would testify. The state moved to strike Grundy's testimony claiming that the discussion violated the court's sequestration order. Defense counsel objected, stating that he had great difficulty contacting Grundy in order to schedule her testimony, and that he may have instructed the defendant to call Grundy to tell her to call defense counsel. The trial court

granted the state's motion, ordered Grundy's testimony stricken from the record, and instructed the jury to disregard it.

The primary purpose of a sequestration order is to ensure that the defendant receives a fair trial by preventing witnesses from shaping their testimony to corroborate falsely the testimony of others. *State* v. *Pikul,* 150 Conn. 195, 200, 187 A.2d 442 (1962). Such orders may be effectuated upon a party's motion by court order. That order may impose a broader prohibition than that provided by the sequestration statute. *State* v. *Williams,* 169 Conn. 322, 331, 363 A.2d 72 (1975); *State* v. *Scott,* 16 Conn. App. 172, 182, 547 A.2d 77, cert. denied, 209 Conn. 821, 551 A.2d 758 (1988). "An inquiry into the facts and circumstances of each case is necessary to ascertain whether the purpose of a sequestration order has been thwarted." *State* v. *Scott,* supra.

At the request of defense counsel, the sequestration order in the present case prohibited *any* discussion of testimony among witnesses during the trial. The defendant telephoned a future witness, discussed the ongoing trial, the number of persons who had testified until that point in time, and who had testified. Grundy stated that the defendant had told her that Romeo had already testified and that the defendant had told her that "it was all crazy and she'd never do anything to hurt anybody." Grundy and the defendant both were witnesses at trial. Under these circumstances, we cannot say that the trial court improperly concluded that the sequestration order was violated.

The remedy to be applied for a violation of a sequestration order rests in the trial court's discretion. *State* v. *Falby,* 187 Conn. 6, 27, 444 A.2d 213 (1982). In this case, it was well within the discretion of the trial court to determine that the fairness of the trial required the striking of the witness' testimony.

Even were we to decide that the trial court's remedy was excessive under these circumstances, the striking of Grundy's testimony was harmless since its substance was presented by other witnesses. Romeo, Booth and Stephanie Hanson, a nurse at Seaside, all testified concerning the victim's violent nature, and the defendant herself described the staff training in techniques for restraining violent patients. We conclude, accordingly, that the remedy applied by the trial court for a violation of its sequestration order did not deprive the defendant of her constitutional rights.

## II

The defendant next claims that the state violated her due process rights by failing to disclose exculpatory material as required under *Brady* v. *Maryland,* 373 U.S. 83, 83 S. Ct. 1194, 10 L. Ed. 2d 215 (1963), and under General Statutes § 54-86c,[1] and Practice Book § 741 (1) and (3).[2]

---

[1] General Statutes § 54-86c provides in pertinent part: "DISCLOSURE OF EXCULPATORY INFORMATION OR MATERIAL. (a) Not later than thirty days after any defendant enters a plea of not guilty in a criminal case, the state's attorney or deputy assistant state's attorney in charge of the case shall disclose any exculpatory information or material which he may have with respect to the defendant whether or not a request has been made therefor. If prior to or during the trial of the case, the prosecutorial official discovers additional information or material which is exculpatory, he shall promptly disclose the information or material to the defendant."

[2] Practice Book § 741 provides in pertinent part: "[DISCLOSURE BY THE PROSECUTING AUTHORITY] INFORMATION AND MATERIALS DISCOVERABLE BY DEFENDANT AS OF RIGHT

"Upon a written motion made by a defendant within ten days after the entry of a plea, the prosecuting authority, within the time set by the judicial authority, shall disclose in writing the existence of and allow the defendant to inspect, copy, photograph and have reasonable tests made on any of the following relevant materials:

"(1) Exculpatory information or materials . . .

"(3) Adequately identified books, tangible objects, papers, photographs, or documents which are within the possession, custody, or control of any governmental agency, and which are material to the preparation of the defense or are intended for use by the prosecuting authority as evidence in chief at the trial . . . ."

The basis of the defendant's claim is as follows: On January 13, 1988, the defendant filed a nine page motion for discovery and inspection, enumerating fifteen categories of information that she requested from the prosecution. This list included a request for "[a]dequately defined books, tangible objects, papers, photographs or documents which are within the possession, custody or control of any State agency, and which are material to the preparation of the defense or are intended for use by the prosecuting authority as evidence-in-chief at the trial." The state responded, "none known at this time." On December 29, 1988, the defendant filed a supplemental motion for discovery and inspection requesting, among other things, that the state reveal the medical or any other records of the reported injuries of DeJesus. The state objected to this request. The record does not indicate that the defendant ever claimed the motion to the court.

The defendant's brief indicates that the documents requested from the prosecution were client progress notes, which are records containing daily notations of a particular client's behavior and routines at Seaside. The defendant alleges that these reports would not have had any notation of an injury sustained by the victim on April 22, and that the injury to the victim on May 23 occurred as a result of a fight between the victim and another client at Seaside.

We will quickly dispose of the defendant's *Brady* and statutory claims. "Our Supreme Court has stated that '[i]n order to establish a violation of *Brady* and its progeny, the defendant must demonstrate the prosecution *had possession* of material information favorable to the accused . . . .' (Emphasis added; footnote omitted.) *State* v. *Falcone,* 191 Conn. 12, 17, 463 A.2d 558 (1983); see also General Statutes § 54-86c." *State* v. *Bettini,* 11 Conn. App. 684, 692, 528 A.2d 1180, cert. denied, 205 Conn. 804, 531 A.2d 937 (1987). General

Statutes § 54-86c requires that the prosecutor *be in possession of exculpatory* information or material. In the present case, there is no basis for concluding that the prosecution ever possessed the requested information. The prosecutor stated at trial that she never possessed, and never saw, the documents alluded to by the defense. The defendant does not dispute the prosecution's assertion, and only states that the documents were in the possession of Seaside.

Furthermore, the defendant's conclusion that these documents are exculpatory or material is pure speculation. "The mere possibility that an item of undisclosed information might have helped the defense, or might have affected the outcome of the trial, does not establish 'materiality' in the constitutional sense." *United States* v. *Agurs,* 427 U.S. 97, 109–10, 96 S. Ct. 2392, 49 L. Ed. 2d 342 (1976). The defendant has failed to establish that the prosecutor was in possession of these materials and has failed to show that the requested material was exculpatory or material. Her *Brady* and statutory claims, therefore, are without merit.

The defendant's claim that the state was under a duty to produce this information pursuant to Practice Book § 741 is equally without merit. Section 741 (3) requires the prosecutor to disclose certain types of information including that which is "material to the preparation of the defense." The defendant did not, as set forth above, establish the "materiality" of the requested information for the defense. Because the defendant has not established that the documents sought were material to the defense or that they were exculpatory, we cannot say that the prosecution was under a duty, pursuant to Practice Book § 741, to engage in an independent investigation to discover such materials for the defense.

## III

The defendant's third claim is that the trial court impermissibly restricted her constitutionally guaranteed right of confrontation[3] when it prevented her from eliciting, during cross-examination, evidence of possible bias on the part of a witness for the state. The defendant attempted to elicit testimony from Romeo and from Geneva Ross, unit supervisor at Seaside during April and May of 1987, that was intended to show that the defendant had reported Romeo for an earlier act of client abuse, that Romeo was reprimanded by the department of mental retardation for that abuse, and that Romeo's allegations regarding the defendant were made in retaliation for the earlier report. The state objected to this line of inquiry on the ground of relevance. Defense counsel argued that the evidence sought was relevant to the credibility of Romeo and to her motives. The trial court sustained the state's objection.

When faced with a claim of undue restriction on cross-examination, this court must determine (1) whether the defendant was accorded the minimum cross-examination required by the constitution and, if so, (2) whether the court nonetheless abused its discretion. *State* v. *Johnson,* 21 Conn. App. 291, 294, 573 A.2d 1218 (1990).

It is not disputed "that in the adversarial setting of a trial, the accused has a right under the confrontation clause 'to expose to the jury the facts from which the jurors, as the sole triers of fact and credibility, [can] appropriately draw inferences relating to the reliability of the [state's] witness.' *Davis* v. *Alaska,* 415 U.S. 308, 318, 94

---

[3] The sixth amendment to the United States constitution, as applied to the states in *Pointer* v. *Texas,* 380 U.S. 400, 403, 85 S. Ct. 1065, 13 L. Ed. 2d 923 (1965), provides: "In all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him . . . ."

S. Ct. 1105, 39 L. Ed. 2d 347 (1974); *State* v. *Ouellette,* 190 Conn. 84, 101–103, 459 A.2d 1005 (1983)." *State* v. *Kelly,* 208 Conn. 365, 375, 545 A.2d 1048 (1988). We also "recognize that cross-examination concerning motive, interest, or bias is a matter of right and may not be unduly restricted." *State* v. *Fullwood,* 199 Conn. 281, 286, 507 A.2d 85 (1986). "The defendant's right to cross-examination . . . is not absolute and is subject to reasonable limitation by the court." *State* v. *Thompson,* 191 Conn. 146, 148, 463 A.2d 611 (1983). Moreover, "[e]very evidentiary ruling which denies a defendant a line of inquiry to which he thinks he is entitled is not constitutional error." *State* v. *Vitale,* 197 Conn. 396, 403, 497 A.2d 956 (1985).

A review of the record in the present case discloses that the required constitutional standard was satisfied. The defendant had sufficient opportunity to cross-examine Romeo in order to expose facts affecting her credibility and bias. Romeo clearly voiced her dislike of the defendant. Romeo stated that the defendant "came in on duty and she, in her usual screaming voice, filthy, name calling . . . ." In addition, on cross-examination, Romeo testified that she believed that the defendant had damaged her personal property, and stated of that damage: "It was due to her [referring to the defendant]. I was being harassed and intimidated and everything else." Defense counsel then asked Romeo: "You really hate her, don't you?" Accordingly, the defendant was permitted to expose facts to the jury regarding the witness' bias against the defendant, and we conclude that the constitutional requirement has been satisfied.

When the right to cross-examine on bias is not altogether denied, the scope and extent of cross-examination lies in the court's discretion. *State* v. *Johnson,* supra, 296. Under the circumstances in this case, the trial court properly sustained the state's objection to the

proffered evidence. Although cross-examination of a witness concerning bias is a matter of right for the defendant in a criminal trial, and such evidence is relevant concerning the witness' credibility, we conclude that the trial court's ruling was not erroneous "[b]ecause of the more than ample opportunity to impeach the credibility of [the witness] afforded the defendant in the cross-examination allowed by the court . . . ." Id.

## IV

The defendant's next claim is that the trial court improperly denied her an opportunity to cross-examine Romeo regarding certain false statements allegedly made by Romeo to police officers. Defense counsel claimed, during an offer of proof, that Romeo told police officers that on April 12, 1987, she heard someone being slapped and observed another client at Seaside exit from where the defendant was with a red, hand shaped mark on her face. Defense counsel stated that that information was used by the officer to help establish probable cause for the defendant's arrest warrant. During the trial, defense counsel attempted to question Romeo about the statements made to the officers and the state objected. The trial court sustained the state's objection.

A witness may be impeached by specific acts of conduct that evidence a lack of veracity. *State* v. *Perry,* 195 Conn. 505, 523, 488 A.2d 1256 (1985); *Martyn* v. *Donlin,* 151 Conn. 402, 408, 198 A.2d 700 (1964); *Vogel* v. *Sylvester,* 148 Conn. 666, 675, 174 A.2d 122 (1961); *Shailer* v. *Bullock,* 78 Conn. 65, 69, 61 A. 65 (1905). Whether a particular act of misconduct logically indicates a lack of veracity is a question for the court. *Vogel* v. *Sylvester,* supra, 675–76. Both the allowance and the extent of cross-examination into the misconduct of a witness is discretionary with the trial court; *Martyn*

v. *Donlin,* 151 Conn. 402, 408, 198 A.2d 700 (1964); and such evidence may be excluded if irrelevant or if it has a tendency to confuse or impede the litigation by injecting collateral issues into the trial. *Vogel* v. *Sylvester,* supra; *Robinson* v. *Atterbury,* 135 Conn. 517, 521, 66 A.2d 593 (1949). If the witness, on cross-examination, denies the act of misconduct, the examiner must take the answer given, and may not offer collateral evidence of such conduct. *Martyn* v. *Donlin,* supra.

In the present case, defense counsel indicated to the trial court during his offer of proof that he expected to introduce evidence from another witness to establish that the charges made by the witness were untrue. The court was clearly left with this impression.[4] The relevance of defense counsel's question depended, therefore, on the introduction of collateral evidence. In this context, we cannot say that the trial court abused its discretion in concluding that the questions to be asked by defense counsel were not, in and of themselves, relevant.

## V

The defendant's final claim is that the trial court improperly excluded the copies of the client progress notes that were in the defendant's possession on the basis that they did not satisfy the business records exception to the hearsay rule. The defendant sought to introduce into evidence portions of a copy of a client progress note as a business record. The defendant claims that the exclusion of these records was improper and harmful. We disagree.

The standards governing the admissibility of evidence proffered under the business records exception to the

---

[4] "The Court: And so . . . then there would follow some collateral evidence by a different witness about what this witness said about the defendant on April 12 was correct or not."

hearsay rule are set forth in General Statutes § 52-180. The three requirements that must be satisfied are (1) that the record was made in the regular course of business, (2) that it was the regular course of business to make the writing, and (3) that the writing was made at the time of the transaction or occurrence or within a reasonable time thereafter. *State* v. *Waterman,* 7 Conn. App. 326, 341, 509 A.2d 518, cert. denied, 200 Conn. 807, 512 A.2d 231 (1986). A proper foundation must be established for the admission of business records and proof must be offered by the proponent of compliance with the conditions imposed by the statute. The sufficiency of the foundation is a question left to the trial court's discretion. *LaFaive* v. *DiLoreto,* 2 Conn. App. 58, 64, 476 A.2d 626, cert. denied, 194 Conn. 801, 477 A.2d 1021 (1984). If an abuse of discretion is claimed, it is the appellant's burden to demonstrate the harmfulness of the error. *Darling* v. *Waterford,* 7 Conn. App. 485, 488, 508 A.2d 839 (1986).

"Reproductions of original documents are admissible under the business records exception to the hearsay rule if the conditions set forth in General Statutes § 52-180 (a) are satisfied." *Bukert* v. *Petrol Plus of Naugatuck, Inc.,* 5 Conn. App. 296, 299, 497 A.2d 1027 (1985). A copy of a business record is admissible under that statute if (1) the copy was made in the ordinary course of business and (2) the copy accurately reproduced the original on a durable medium. General Statutes § 52-180 (c);[5] *Emhart Industries, Inc.* v. *Amal-*

---

[5] General Statutes § 52-180 provides in relevant part: "(c) Except as provided in chapter 3, if any person in the regular course of business has kept or recorded any memorandum, writing, entry, print, representation or combination thereof, of any act, transaction, occurrence or event, and in the regular course of business has caused any or all of them to be recorded, copied or reproduced by any photographic, photostatic, microfilm, microcard, miniature photographic or other process which accurately reproduces or forms a durable medium for so reproducing the original, the original may be destroyed in the regular course of business unless its preser-

*gamated Local Union 376, U.A.W.,* 190 Conn. 371, 386, 461 A.2d 422 (1983); C. Tait & J. LaPlante, Connecticut Evidence (2d Ed.) § 11.14.4.

In this case, the defendant failed to introduce any evidence indicating that the copies of the records were made in the regular course of business. Nor was any evidence introduced to establish that the process by which they were reproduced accurately formed the copies. The trial court was correct, therefore, in holding that the defendant had failed to satisfy the requirement for introducing a copy of a business record under our statutory exception to the hearsay rule.

Additionally, the defendant has failed to establish the harmfulness of the alleged error. The defendant claims that the exclusion was harmful because the jury had no other evidence supporting the defendant's claim that the victim was injured by another client on May 23, 1987. The record reveals, however, that the defendant and Romeo both testified that they had observed the victim and another client engaged in an altercation.

The judgment is affirmed.

In this opinion, DALY, J., concurred.

DUPONT, C. J., concurring. I agree with the majority in its conclusions as to the five issues raised by the defendant. I do not, however, agree with the reasoning of the majority as to the fifth issue, although I do

vation is otherwise required by statute. The reproduction, when satisfactorily identified, shall be as admissible in evidence as the original in any judicial or administrative proceeding, whether the original is in existence or not, and an enlargement or facsimile of the reproduction shall be likewise admissible in evidence if the original reproduction is in existence and available for inspection under direction of court. The introduction of a reproduced record, enlargement or facsimile shall not preclude admission of the original."

agree that the trial court was correct to exclude from evidence copies of certain records in the defendant's possession.

In my opinion, the issue raised by the facts of this case is not whether the particular records were copies of records made in the regular course of business but whether the witness, through whom the copies were attempted to be introduced into evidence, was qualified to verify that they were made in the regular course of business.

The client progress notes were offered by the defendant during the cross-examination of the state's chief witness. At the time of the latter's testimony, she was no longer employed at Seaside, although she had been employed there as a mental retardation worker at the time of the alleged crime. It does not appear from the record whether the defendant was an employee of Seaside at the time of trial or how the client progress notes came to be in the defendant's possession.

It is the system and habit of regularity of making business records that give rise to their reliability. *Emhart Industries, Inc.* v. *Amalgamated Local Union 376, U.A.W.,* 190 Conn. 371, 385, 461 A.2d 422 (1983). That reliability allows the exception to the hearsay rule on which General Statutes § 52-180 rests. It follows that the witness through whom the records are introduced should be a witness on whom the trial court can depend for the authenticity of the particular document. Id., 386 n.10. This usually means that the witness is an employee at the time of trial and has knowledge of the system for record keeping of the particular business. See id., 386; *E. Paul Kovacs & Co.* v. *Alpert,* 180 Conn. 120, 429 A.2d 829 (1980); *State* v. *Paulette,* 158 Conn. 22, 255 A.2d 855 (1969); *State* v. *Ferraiuolo,* 145 Conn. 458, 144 A.2d 41 (1958).

The question that I believe must be resolved is whether in this case the credentials of the witness were sufficient to allow her to testify to the foundation required for admissibility. A witness must have the necessary status in a particular company's hierarchy in order to testify to the requirements of § 52-180. See *American Oil Co.* v. *Valenti,* 179 Conn. 349, 360, 426 A.2d 305 (1979). The trial court was within its discretion to refuse the admission, as business records, of the copies of the client progress notes in the unexplained possession of the defendant, through a witness who was not the caretaker of the records at the time they were kept and was not shown to have the requisite knowledge to lay the foundation of § 52-180.