STATE OF CONNECTICUT *v.* VINCENT COLON
(9809)

DALY, O'CONNELL and HEIMAN, Js.

Argued April 3—decision released July 14, 1992

*Elizabeth M. Inkster,* assistant public defender, with whom, on the brief, were *G. Douglas Nash,* public defender, and *Richard Emanuel,* assistant public defender, for the appellant (defendant).

*Frederick W. Fawcett,* assistant state's attorney, with whom, on the brief, were *Donald A. Browne,* state's attorney, and *Stephen J. Sedensky III,* assistant state's attorney, for the appellee (state).

DALY, J. The defendant appeals from a judgment of conviction, rendered after a jury trial, of manslaugh-

ter in the first degree in violation of General Statutes § 53a-55 (a) (1). The defendant claims that the trial court improperly (1) restricted his cross-examination of the state's witnesses about their involvement with illegal narcotics, (2) admitted as a prior inconsistent statement evidence that a state's witness had been threatened, (3) instructed the jurors to reach a verdict after they had announced that they were deadlocked, (4) instructed the jury about the state's burden of proof, and (5) instructed the jury about inferences to be drawn from the evidence. We affirm the judgment of the trial court.

The jury reasonably could have found the following facts. On July 19, 1989, the victim, Larry Bush, and Willie Carr went to the P. T. Barnum apartments in Bridgeport. Upon their arrival, the victim got into an argument and a fight with a group of Hispanic males. Carr testified that the defendant, who was standing with the group of Hispanic males, drew a gun and began shooting as Carr ran for cover. After the shooting stopped, Carr returned to the area and found Bush mortally wounded. Carr, who was acquainted with the defendant, made both an out-of-court and in-court identification of the defendant as the person who had the gun.

Rohan Clarke testified that he was at the apartment complex on the day of the shooting overseeing some individuals who were selling illegal narcotics for him. Clarke stated that he was acquainted with both the victim and the defendant. Clarke also testified that he saw the defendant shoot the victim. He admitted that he did not want to be a witness and was present in court only because of a subpoena by the state's attorneys' office.

Roderick Ford, a state's witness, testified that he was at the apartment complex on July 19, 1989, but that

he did not witness the incident. This testimony contradicted his earlier sworn statement in which he identified the defendant, whom he knew as the person who shot the victim. Dolores Feliciano, a tenant at the apartment complex, testified on behalf of the defendant. She testified that she saw a black man shoot another black man. She did not know the defendant or the victim in this case.

## I

The defendant first claims that the trial court improperly restricted his cross-examination of the state's witnesses about their involvement with illegal narcotics. The defendant argues that the court's restrictions violated his federal and state constitutional rights to confront the witnesses against him.

The following facts are relevant to this claim. Carr, who had a prior felony conviction for possession of narcotics, testified that he was not involved with illegal drugs at the time of the shooting. The defendant questioned Carr about his relationship with an individual identified as John Allen. Carr stated that he did not work for Allen during July, 1989. The defendant attempted to make an offer of proof outside the jury's presence about Carr's involvement with illegal narcotics. The defendant could state only that he had some information that Carr was involved with selling drugs. The court ruled that this was not the time to conduct discovery about Carr's involvement with narcotics. The defendant objected and took an exception to the court's ruling. The court allowed the jury to be told only that Carr had an unspecified felony conviction. The court allowed the defendant to inquire whether Carr was using drugs at the time of the shooting because that would affect his ability to perceive and remember the events.

Clarke, another state's witness, admitted that he was on probation for selling marihuana at the time that he testified. He further admitted that he had other people sell narcotics for him on July 19, 1989, at the apartment complex. This constituted a violation of his probation. During cross-examination, defense counsel asked Clarke how much money he made from the sale of drugs. The court sustained the state's objection to this question. The court found that details of Clarke's drug transactions and the amount of income generated from them were not probative of any issue in the case. The defendant took an exception to the court's ruling. After further cross-examination, the defendant asked Clarke if he wore a beeper. Clarke stated that he was wearing a beeper in court. Defense counsel then asked if he could see the beeper. The state's objection to this question was sustained. The court found that this would not relate to the issue of credibility and sustained the objection on the same basis as the previous objection.

"The confrontation clause of the sixth amendment requires that the defendant be accorded some irreducible minimum of cross-examination into matters affecting the reliability and credibility of the state's witnesses." *State* v. *Ortiz,* 198 Conn. 220, 224, 502 A.2d 400 (1985). We must first determine whether the defendant was allowed the minimum cross-examination so as " 'to expose to the jury the facts from which the jurors, as the sole triers of facts and credibility, [can] appropriately draw inferences relating to the reliability of the (state's) witnesses.' " *State* v. *Crumble,* 24 Conn. App. 57, 65–66, 585 A.2d 1245 (1991), quoting *Davis* v. *Alaska,* 415 U.S. 308, 318, 94 S. Ct. 1105, 39 L. Ed. 2d 347 (1974). Even if the constitutional standard of cross-examination was satisfied, we must also determine whether the court's restriction constituted an abuse of discretion. *State* v. *Crumble,* supra, 65. It is also well established that the defendant's right to cross-

examine a witness is not absolute and may be subject to reasonable limitations. *State* v. *Thompson,* 191 Conn. 146, 148, 463 A.2d 611 (1983). "Every evidentiary ruling which denies a defendant a line of inquiry to which he thinks he is entitled is not constitutional error." *State* v. *Vitale,* 197 Conn. 396, 403, 497 A.2d 956 (1985).

After reviewing the record, we conclude that the constitutional standard for confrontation was met. The defendant informed the jury that Clarke was on probation presently and at the time of the incident for selling marihuana. Clarke admitted to having others sell drugs for him on the day of the shooting in violation of his probation. He also stated that he was gambling when the shooting occurred and that the victim was not one of his customers. The defendant also asked over the state's objection whether the victim was a customer of any of the witness' sellers. This indicated that Clarke was significantly involved in the sale of illegal drugs because he had others selling for him. During redirect examination, Clarke admitted that, had he not been subpoenaed, he would not have come forward to testify. Therefore, Clarke's credibility was clearly brought into question by the defendant's cross-examination.

We next examine whether the court abused its discretion by refusing inquiry into the details related to Clarke's selling of drugs and its limitation of the defendant's inquiry into Clarke's wearing of a beeper. An abuse of discretion occurs if the defendant establishes that the trial court's restrictions on his cross-examination were clearly prejudicial. *State* v. *Castro,* 196 Conn. 421, 426, 493 A.2d 223 (1985). Because the trial court's limitation of his cross-examination of Clarke was not a constitutional violation, we will give "every reasonable presumption" in favor of upholding the court's ruling when determining if the ruling amounted to an abuse of discretion. *State* v. *Briggs,*

179 Conn. 328, 333, 426 A.2d 298 (1979), cert. denied, 447 U.S. 912, 100 S. Ct. 3000, 64 L. Ed. 2d 862 (1980).

The defendant has failed to establish prejudice resulting from the court's limitation of his cross-examination of Clarke. A trial court is vested with broad discretion in determining the relevance and admissibility of evidence. *State* v. *Bunkley,* 202 Conn. 629, 649, 522 A.2d 795 (1987). "The evidence sought through cross-examination must be relevant." *State* v. *Johnson,* 21 Conn. App. 291, 293, 573 A.2d 1218 (1990). The court's finding that the specific details related to the amount of income from Clarke's drug transactions and inquiry about wearing a beeper were irrelevant to the issues in this case and, thus, did not constitute an abuse of discretion.

We apply the same analysis to the court's limitation of cross-examination concerning Carr. During cross-examination, Carr stated that he identified the defendant as the shooter upon discovering that the police viewed Carr as a suspect in the shooting. He stated that he was not involved in any way with illegal drugs during July, 1989. Carr also admitted to a felony conviction for which he served approximately eight months in jail. At the end of Carr's testimony on June 26, 1989, the court asked Carr to remain available in case he was recalled as a witness. On July 2, 1990, Carr was recalled as a witness by the defense. The defendant did not attempt to develop any further information about Carr's involvement with illegal drugs. The defendant questioned Carr about his association with an individual named Jakeem who was involved in an argument with the victim before he was shot.

Again, we find that the constitutional standard was satisfied by the defendant's cross-examination of Carr. Carr denied being involved with illegal drugs during July, 1989. The defendant failed to offer any evidence

contradicting this answer. The court's ruling that Carr's possession conviction could be referred to only as an unspecified felony conviction did not constitute an abuse of discretion. See *State* v. *Geyer,* 194 Conn. 1, 12–13, 480 A.2d 489 (1984). "Although a narcotics offense, such as [a] conviction for possession of heroin, reflects adversely on the general character of a witness, it has no direct materiality in determining the credibility of a witness." *State* v. *Roman,* 6 Conn. App. 189, 191, 504 A.2d 529 (1986). The defendant has failed to establish any prejudice resulting from the court's rulings on his cross-examination of Carr.

## II

The defendant next claims that the trial court improperly admitted as a prior inconsistent statement evidence that a state's witness had been threatened.

The following additional facts are relevant to this claim. The defendant was initially charged with murder in violation of General Statutes § 53a-54a (a). On October 12, 1989, at the defendant's probable cause hearing, Roderick Ford testified that he saw the defendant shoot the victim. Ford also gave a written statement to Detective David Silva of the Bridgeport police implicating the defendant on July 25, 1989. Ford further testified that he met with a public defender representing the defendant at the probable cause hearing on the morning of October 12, 1989. Ford told the public defender that the defendant did not shoot the victim and that he did not know the defendant. Ford testified that the defendant told him to say this. Ford also stated that he had been threatened by some people associated with the defendant. He admitted to selling drugs for the defendant on the day of the shooting.

At trial, the state called Ford to testify about the events surrounding the shooting. Ford testified that he did not see what happened to the victim. He then

stated that he lied in his statement given to Silva impli-
cating the defendant. When asked why he lied, Ford
responded, "I don't know." Ford insisted that he also
lied at the probable cause hearing about the defend-
ant's involvement in the shooting of the victim. The
state then sought to elicit Ford's recollection of being
threatened at the time of the probable cause hearing.
The defendant objected to this line of questioning and
argument was held outside the presence of the jury.
The court allowed the state to ask about threats made
against Ford because it was relevant to the change in
his testimony. The court also stated that because Ford
testified at the probable cause hearing about being
threatened it could be admissible as a prior inconsist-
ent statement. Ford testified that although he had been
threatened about testifying in October, 1989, since then
he had not received any other threats. Ford confirmed
that the defendant had told him in October, 1989, to
say that the defendant did not participate in the
shooting.

"The general rule is that threats against witnesses
are not relevant and are thus inadmissible as evidence
unless the defendant is linked in some way to the mak-
ing of the threats." *State* v. *Walker,* 214 Conn. 122,
129, 571 A.2d 686 (1990). "An exception to the gen-
eral rule concerning the admissibility of evidence of
threats exists, however, where the evidence of threats
is offered not to prove the guilt of the accused but
rather to explain a witness' prior inconsistent state-
ment." Id.

The defendant argues that Ford did not make any
inconsistent statements that would require explanation
through the admission of threats against the witness.
Ford claimed to have been threatened in October, 1989.
Despite these threats, Ford testified at the probable
cause hearing that the defendant shot the victim. Ford
then changed his story and claimed that he had lied

about the defendant's involvement. Ford stated that he had not been threatened after the initial threats in October, 1989.

" 'The scope and extent of the explanation for the conduct or inconsistent statements [of a witness] is a matter within the discretion of the trial court and we may reverse only upon a finding of abuse of that discretion. *State* v. *Charles,* 525 S.W.2d 360, 363 (Mo. App. 1975).' . . . " *State* v. *Walker,* supra, 130, quoting *State* v. *May,* 587 S.W.2d 331, 336 (Mo. App. 1979). Ford's testimony at trial linked the defendant to the making of a threat concerning his involvement in the shooting. Ford testified that the defendant told him in October, 1989, to state that he did not shoot the victim. This threat was admissible because it was linked to the defendant.

The court did not abuse its discretion in allowing the state to show that Ford had previously acknowledged being threatened by people associated with the defendant. Ford was unable to give any reason why he lied earlier about the defendant's involvement. Even though the threats were made in October, 1989, and did not initially prevent Ford from implicating the defendant, the earlier threat provides some basis for the change in Ford's testimony. The court's determination that the threats may have explained Ford's conduct in changing his story was within its discretion.

### III

The defendant next claims that the court improperly charged the jury on reasonable doubt. The defendant argues that the court's instructions diluted the state's burden of proof in violation of his state and federal constitutional rights. The defendant claims that the court's instructions incorrectly forced the jury to articulate a basis for their doubts. He further claims that the court incorrectly characterized a reasonable doubt as one

which a person "would pay some heed to" in his or her daily affairs. We reject both aspects of the defendant's claim.

In its original charge, the court explained what constituted a reasonable doubt.[1] During the course of its deliberations, the jurors requested that the court further explain reasonable doubt in "laymen's terms." The court repeated its earlier definition of reasonable doubt.

The court's instruction in this case that "a reasonable doubt is a doubt for which a valid reason can be assigned" has been upheld in *State* v. *Findlay,* 198 Conn. 328, 345–46, 502 A.2d 921, cert. denied, 476 U.S. 1159, 106 S. Ct. 2279, 90 L. Ed. 2d 721 (1986). *State* v. *Theriault,* 24 Conn. App. 502, 508, 589 A.2d 379 (1991); see also *State* v. *Ryerson,* 201 Conn. 333, 342–43 n.2, 514 A.2d 337 (1986) (trial court's instruction that a reasonable doubt is one for which a reasonable person could assign a valid reason is not improper). We reject this aspect of the defendant's claim.

---

[1] The court instructed: "The burden then is on the state to prove the accused guilty of the crime for which he is charged, and the accused does not have to prove his innocence . . . . And we have been using the term beyond a reasonable doubt, and I will now define and explain that phrase to you. It has no technical or unusual meaning. You can arrive at the real meaning of it by emphasizing the word reasonable. A reasonable doubt, a reasonable doubt is a doubt for which a valid reason can be assigned. It is a doubt if something more than a guess or a surmise. . . . It is a doubt based upon reasonable and common sense. The kind of doubt that would make a reasonable person hesitate to act. Proof beyond a reasonable doubt if proof of such a compelling and convincing nature that you would be willing to rely on it without hesitation in your most important affairs. A reasonable doubt in other words is a real doubt, an honest doubt, a doubt which has its foundation in the evidence or lack of evidence. It is such a doubt as a series of affairs which concern you in everyday life, you would pay some heed to. The law does not require proof beyond all doubt. But the law does require however, is that after hearing all the evidence if there is something in the evidence or lack of evidence which leaves in the minds of the jury as reasonable men and women a reasonable doubt of the guilt of the accused, then the accused must be given the benefit of that doubt and acquitted."

The defendant also claims that the court should not have defined a reasonable doubt as one which the jurors "would pay some heed to." This instruction is similar to the instruction upheld in *State* v. *Theriault,* supra. The trial court in that case defined "a reasonable doubt as 'the kind of doubt that in the serious affairs that concern in your everyday life, you would pay heed and attention to.' " Id. Here, the trial court also stated that a reasonable doubt is "[t]he kind of doubt that would make a reasonable person hesitate to act." In both *State* v. *Smith,* 210 Conn. 132, 147–48, 554 A.2d 713 (1989), and *State* v. *Johnson,* 214 Conn. 161, 177–80, 571 A.2d 79 (1990), our Supreme Court preferred this definition concerning hesitation over a definition of reasonable doubt as one that jurors would be "willing to act upon" in their important affairs. On the basis of our review of the original charge and supplemental instructions, we conclude that the court's definition of reasonable doubt was correct and did not dilute the state's burden of proof.

## IV

The defendant next claims that the court incorrectly instructed the jury about drawing inferences from the evidence. The defendant did not file a written request to charge on inferences and also failed to take an exception to the court's charge on inferences. " 'We generally do not consider a claimed error regarding the giving of or failure to give an instruction "unless the matter is covered by a written request to charge or exception has been taken . . . immediately after the charge is delivered." . . .' " (Citations omitted.) *State* v. *Williams,* 202 Conn. 349, 362, 521 A.2d 150 (1987).

The defendant argues that this claim is reviewable under *State* v. *Evans,* 165 Conn. 61, 327 A.2d 576 (1973), and *State* v. *Golding,* 213 Conn. 233, 567 A.2d

823 (1989).[2] We disagree with the defendant's analysis and find that this claim is not reviewable.

The court's instruction on circumstantial evidence required both the underlying fact and the inferred fact to be proved beyond a reasonable doubt. A similar instruction was found to be an incorrect statement of the law in *State* v. *McDonough,* 205 Conn. 352, 355, 533 A.2d 857 (1987), cert. denied, 485 U.S. 906, 108 S. Ct. 1079, 99 L. Ed. 2d 238 (1988); *State* v. *Rivera,* 24 Conn. App. 670, 677, 591 A.2d 440, cert. denied, 219 Conn. 914, 593 A.2d 139 (1991). The trial court, however, is not required to give a separate jury instruction that circumstantial evidence offered by the defendant does not have to be proved beyond a reasonable doubt before the jury can consider it. See *State* v. *Ortiz,* 217 Conn. 648, 667–69, 588 A.2d 127 (1991). "[A]s long as the charge given does not suggest that the defendant's circumstantial evidence must be ignored unless he proves that evidence beyond a reasonable doubt," the court does not have to give a specific instruction differentiating between circumstantial evidence offered by the state from that offered by the defendant. *State* v. *Willis,* 24 Conn. App. 678, 682, 591 A.2d 445 (1991), aff'd, 221 Conn. 518, 605 A.2d 1359 (1992).

We have consistently found similar incorrect jury instructions on circumstantial evidence to be harmless beyond a reasonable doubt. *State* v. *Tinsley,* 24 Conn. App. 685, 689, 591 A.2d 448, cert. denied, 220 Conn.

---

[2] A defendant "can prevail on a claim of constitutional error not preserved at trial only if *all* of the following conditions are met: (1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation clearly exists and clearly deprived the defendant of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt. In the absence of any one of these conditions, the defendant's claim will fail." (Emphasis in original.) *State* v. *Golding,* 213 Conn. 233, 239–40, 567 A.2d 823 (1989).

902, 593 A.2d 968 (1991); *State* v. *Willis,* supra. Because the defendant did not bear any burden of proof, the jury was not misled by this instruction, which, in effect, increases the state's burden of proof. See *State* v. *James,* 211 Conn. 555, 581, 560 A.2d 426 (1989); *State* v. *Tinsley,* supra. We decline the defendant's invitation to reverse our position on this issue. The defendant is not entitled to review of this claim because he has failed to satisfy the fourth prong of *Golding.*

## V

The defendant next claims that the trial court improperly instructed the jury after it reported to the court that it was deadlocked and unable to reach a unanimous verdict. During the course of its deliberations, the jury sent a note to the court stating that it was deadlocked. The court asked the jurors to continue deliberations. The jury then sent another note that stated: "We the jury have reached a verdict of not guilty on the first degree murder charge. However, we are deadlocked on the intentional manslaughter with a vote of eight guilty and four not guilty. Four not guilty jurors totally discredit all the testimony of Carr, Ford and Clarke. We're deadlocked." After further deliberations, the jury again notified the court that they were "hopelessly deadlocked" on all manslaughter charges. The court then gave a Chip Smith[3] charge to the jury. After

---

[3] The court instructed: "It is your duty to make every reasonable effort to come to a verdict. You must listen to what the other jurors say. You must not hesitate to reconsider their opinion. . . . As reasonable people you normally should ultimately be able to come to a unanimous agreement upon a verdict. On the other hand, the verdict must be one which each juror considers just in his or her own mind. A juror cannot desert his or her own mind. A juror cannot desert his or her firm and honest convictions simply to reach an agreement which he or she regards as wrong. Although the verdict which each of you agrees must express his or her own conclusion, and not be a mere acquiescence in the conclusion of your fellow jurymen. Yet, in order to bring your twelve minds to a unanimous result, you should

another question about the difference between manslaughter in the first and second degree, the jury reached a verdict. The defendant argues that the court's Chip Smith charge was coercive because it was directed only to the minority jurors who favored an acquittal. The defendant never objected at trial to the court's Chip Smith charge. He asserts that because this claim concerns a fundamental constitutional right, it can be reviewed on the record, and is entitled to *Evans/Golding* review.

The Chip Smith instruction, which derives from *State v. Smith*, 49 Conn. 376 (1881), has been consistently upheld as constitutional and proper when a jury announces that it is unable to reach a unanimous verdict. See *State v. Ryerson*, 201 Conn. 333, 349–50, 514 A.2d 337 (1986); *State v. O'Neil*, 200 Conn. 268, 281–84, 511 A.2d 321 (1986); *State v. Ralls*, 167 Conn. 408, 424–25, 356 A.2d 147 (1974), overruled on other grounds, *State v. Rutan*, 194 Conn. 438, 479 A.2d 1209 (1984). Our Supreme Court has noted that " '[n]o specific words are required if jurors are properly instructed that each juror's vote must reflect his [or her] considered judgment as to how the case is to be decided. . . . The right to disagree is implicit.' " *State v. Ralls*, supra,

---

consider the questions you have to decide not only carefully, but also with due regard in deference to the opinions of each other. In conferring together you ought to pay proper respect to each other's opinion and listen with an open mind to each other's arguments. If much the larger number of you reach a certain conclusion, a dissenting juror or jurors should consider whether his or her opinion is a reasonable one when the evidence does not lead to a similar result in the minds of so many men and women who are equally honest and equally intelligent, who have heard the same evidence with the same attention, with equal desire to arrive at the truth, and under the sanction of the same oath. If a majority of you are for one decision, the minority ought to seriously ask themselves whether they may not reasonably or ought not to doubt their own conclusions when it is not concurred in by most of those with whom they are associated. And they may well distrust the weight or sufficiency of the evidence upon which they rely when it fails to bring the minds of their fellows to the same conclusion they hold. . . ."

425, quoting *United States* v. *Bowles,* 428 F.2d 592, 595–96 (2d Cir.), cert. denied, 400 U.S. 928, 91 S. Ct. 193, 27 L. Ed. 2d 188 (1970). The trial court does not have to inform the jury that it is not required to reach a verdict. *State* v. *Smith,* 222 Conn. 1, 22–23, 608 A.2d 63 (1992).

In this case, the court's Chip Smith charge stated that the jurors should not abandon their firm and honest convictions in order to reach a unanimous result. The court asked only that the minority jurors reevaluate their opinions and be open to further discussion on the majority position. The court did not warn the jurors about the negative consequences of mistrial resulting from a deadlocked jury. "The potential of a mistrial, upon a deadlock, often regarded as coercive, was fully absent in this charge. See, e.g., *Commonwealth* v. *Rodriquez,* 364 Mass. 87, 100 n.16, 300 N.E.2d 192 (1973)." *State* v. *O'Neill,* supra, 284.

In *State* v. *Avcollie,* 188 Conn. 626, 640–42, 453 A.2d 418 (1982), cert. denied, 461 U.S. 928, 103 S. Ct. 2088, 77 L. Ed. 2d 299 (1983), the defendant argued that the Chip Smith charge was coercive because the court was aware that the jury was deadlocked eleven to one for conviction. Id., 641. Our Supreme Court rejected the defendant's claim that the court's Chip Smith charge was "tantamount to a directed verdict of guilty." Id. Here, the jurors were deadlocked eight to four for conviction. Therefore, the minority was in a stronger position than in *Avcollie.* In this case, the court's instructions encouraged the jurors to reach a unanimous result but emphasized that the result should be a product of each juror's own honest and firm beliefs. This is the proper function of the Chip Smith charge. Id.

We find that the "Chip Smith" charge in this case was proper. The defendant has failed to establish the existence of a constitutional violation resulting from

this instruction. The defendant was not deprived of a fair trial by this instruction and, therefore, fails to satisfy the third prong of *State* v. *Golding,* supra.

The judgment is affirmed.

In this opinion the other judges concurred.