### STATE OF CONNECTICUT *v.* KEVIN CARR
### (12652)

DUPONT, C. J., and SPEAR and HENNESSY, Js.

Argued November 28, 1994—decision released March 28, 1995

*Gerald Hecht,* for the appellant (defendant).

*Judith Rossi,* assistant state's attorney, with whom, on the brief, were *Michael Dearington,* state's attorney, and *Earl B. Richards,* assistant state's attorney, for the appellee (state).

HENNESSY, J. The defendant, Kevin Carr, appeals from the judgment of conviction, following a jury trial, of possession of narcotics in violation of General Statutes § 21a-279 (a).[1] His sole claim on appeal is that the trial court improperly failed to grant a mistrial or to strike the testimony of a police officer when the state did not disclose the police officer's surveillance location prior to trial. We affirm the judgment of the trial court.

The jury could reasonably have found the following facts. In the late afternoon of September 11, 1992, Officer John P. Kelly of the New Haven police department was conducting surveillance of Asylum Street from the roof of the Jewish Home for the Aged. From this vantage point he observed the defendant standing near a gate between 72 and 74 Asylum Street. Kelly watched a woman walk up to the defendant and engage in a short conversation with him. The woman then removed something that appeared to be money from her pocket and handed it to the defendant. The defendant then walked over to some bushes near 72 Asylum Street, and removed a brown paper bag. The defendant took a small item from the bag, replaced the bag in the bushes and returned to the woman, who was still standing near the gate. The defendant then handed the item he had retrieved from the bag to the woman, and she departed on foot. Approximately ten or fifteen minutes

---

[1] In the same trial, the defendant was acquitted of one count of possession of a narcotic substance with intent to sell by a person who is not drug-dependent, in violation of General Statutes § 21a-278 (b).

later, Kelly observed an identical transaction between the defendant and another person.

Following these two transactions, Kelly made radio contact with Officer Walter Shreders, gave a description of the defendant, and requested that the defendant be detained. Shreders drove to Asylum Street, found the defendant standing in front of the gate between 72 and 74 Asylum Street, and placed the defendant in the police cruiser.

After watching Shreders detain the defendant, Kelly descended from the roof of the Jewish Home for the Aged, and went to the bushes in front of 72 Asylum Street. He removed the brown paper bag from the bush where the defendant had put it, and found twenty-five yellow glassine packets of cocaine in the bag.

The defendant claims that he first became aware at trial of the location from which Kelly had conducted the surveillance that led to his arrest. Kelly testified to the facts previously described, and the state introduced photographs of the area of 72 and 74 Asylum Street taken from the roof of the Jewish Home for the Aged. At the close of Kelly's testimony, and after an additional witness had testified, the defendant moved for a mistrial, or, in the alternative, that the testimony of Kelly be stricken or that an order allowing the defendant to take photographs from the surveillance post at the Jewish Home for the Aged be issued. The defendant argues that the court should have granted this motion because the state had failed to comply with a pretrial discovery request that required disclosure of any exculpatory information, including the existence of any relevant ''buildings, places or portions therein which are in the possession and control of any govern-

mental agency." See Practice Book § 741 (1) and (7).[2] We do not agree.

Analysis of the defendant's claim begins with *Brady* v. *Maryland*, 373 U.S. 83, 83 S. Ct. 1194, 10 L. Ed. 2d 215 (1963). "In *Brady* the court held that 'suppression by the prosecution of evidence favorable to an accused . . . violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or the bad faith of the prosecution.' *Brady* v. *Maryland*, supra, 87." *State* v. *Doolittle*, 189 Conn. 183, 196, 455 A.2d 843 (1983). The *Brady* rule was refined in *United States* v. *Agurs*, 427 U.S. 97, 108, 96 S. Ct. 2392, 49 L. Ed. 2d 342 (1976), in which the United States Supreme Court stated that " 'the prosecutor will not have violated his constitutional duty of disclosure unless his omission is of sufficient significance to result in the denial of the defendant's right to a fair trial.' " *State* v. *Shannon*, 212 Conn. 387, 399, 563 A.2d 646, cert. denied, 493 U.S. 980, 110 S. Ct. 510, 107 L. Ed. 2d 512 (1989).

Pursuant to *Brady* and *Agurs*, when the defendant claims error as a result of the state's failure to disclose, he bears the burden of showing that the state had possession of material evidence favorable to his defense. *State* v. *Crumble*, 24 Conn. App. 57, 63, 585 A.2d 1245, cert. denied, 218 Conn. 902, 588 A.2d 1077 (1991). " [E]vidence is material only if there is a reasonable

[2] Practice Book § 741 provides in relevant part: "Upon a written motion made by a defendant within ten days after the entry of a plea, the prosecuting authority, within the time set by the judicial authority, shall disclose in writing the existence of and allow the defendant to inspect, copy, photograph and have reasonable tests made on any of the following relevant materials;

"(1) Exculpatory information of materials . . .

"(7) Buildings, places or portions thereof, which are in the possession, custody, or control of any governmental agency and which are material to the defense or about which the prosecuting authority intends to introduce evidence in chief at the trial."

probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. A "reasonable probability" is a probability sufficient to undermine confidence in the outcome.' " *State* v. *Shannon,* supra, 212 Conn. 399, quoting *United States* v. *Bagley,* 473 U.S. 667, 676, 105 S. Ct. 3375, 87 L. Ed. 2d 481 (1985). "In analyzing a *Brady* claim, the courts 'must avoid concentrating on the suppressed evidence in isolation. Rather, we must place it in the context of the entire record. Evidence that may first appear to be quite compelling when considered alone can lose its potency when weighed and measured with all the other evidence, both inculpatory and exculpatory. Implicit in the standard of materiality is the notion that the significance of any particular bit of evidence can only be determined by comparison to the rest.' " *State* v. *Shannon,* supra, 399–400, quoting *Trujillo* v. *Sullivan,* 815 F.2d 597, 613 (10th Cir.), cert. denied, 484 U.S. 929, 108 S. Ct. 296, 98 L. Ed. 2d 256 (1987); see also *State* v. *Pollitt,* 205 Conn. 132, 142–43, 531 A.2d 125 (1987).

Here, the defendant has not demonstrated a reasonable probability that the result of his trial would have been different if the state had disclosed the location of or provided access to the surveillance post prior to trial. As the trial court stated in its denial of the defendant's motion for a mistrial, the police officer conducting the surveillance testified and was available for cross-examination by the defendant, and photographs of the view from the roof of the Jewish Home for the Aged were introduced into evidence. The defendant cross-examined Kelly extensively on his line of sight and his ability to view the defendant's actions clearly. The accuracy of Kelly's observations was also supported by his description of the defendant's clothing to Shreders, and Kelly's seizure of the bag containing cocaine from the location where Kelly had seen the defendant put it.

In light of all the evidence, we find that the defendant has failed to demonstrate that disclosure of or access to the surveillance location prior to trial might have affected the outcome of the trial. Therefore, we need not address the issue of whether the state had "possession, custody or control" of the roof of the Jewish Home for the Aged within the terms of Practice Book § 741 (7). The defendant has failed to establish that the requested disclosure was material and the state's failure to disclose was not improper.

The judgment is affirmed.

In this opinion the other judges concurred.