[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
The petitioner Vincent Colon filed this petition for a writ of habeas corpus on October 19, 1993, claiming that his right to the effective assistance of counsel under article first, § 8, of the Connecticut constitution and the fifth andfourteenth amendments of the United States constitution was violated during his July 1990 murder trial.
CT Page 8427
On July 10, 1990, the petitioner was convicted, after a jury trial, of manslaughter in the first degree in violation of General Statutes § 53a-55 (a)(1) for the shooting death of Larry Bush on July 19, 1989. On September 10, 1990, the petitioner was sentenced by the court, Maiocco, J., to the custody of the respondent commissioner of correction for a term of twenty years, suspended after fifteen years with five years probation. The petitioner's conviction was affirmed. State v.Colon, 28 Conn. App. 231, 611 A.2d 902, cert. denied,223 Conn. 922, 614 A.2d 820 (1992).
The petitioner filed an amended habeas petition on December 10, 1996. The habeas hearing was held on September 26, 1997. At the hearing, the petitioner again amended his petition. The specific claim before the court is that Paul Tymniak, petitioner's trial counsel, was ineffective because during his closing argument he failed to point out all the inconsistent testimony of the state's witnesses, Willie Carr, Rohan Clarke and Roderick Ford. The respondent filed a post-trial brief on January 28, 1998 and the petitioner filed his post-trial brief on March 19, 1998. The petitioner is currently in the custody of the respondent.
 I
The court finds the following facts. Carr testified during the trial that on July 19, 1989, the victim and Carr went to the P. T. Barnum apartments in Bridgeport. Upon arrival near Buildings 6 and 7, the victim became engaged in an argument and fight with a group of Hispanic males. During the fight the petitioner, one of the Hispanic males, drew a gun out of his pants and began shooting. Carr ran for cover. After the shooting stopped, Carr returned to the area and found the victim wounded on the ground near Building 3.[1] The next day, the police brought Carr to the police station where Carr identified the petitioner, whom he knew, in a photograph as the perpetrator of the shooting. During cross-examination, Carr stated that he identified the petitioner as the shooter only after the police told him he was a suspect in the shooting.
Clarke testified during the trial that he was at the apartment complex on the day of the shooting overseeing some individuals who were selling narcotics for him. He said he was acquainted with the victim and the petitioner. Clarke testified that he saw the petitioner shoot the victim with a chrome gun CT Page 8428 while the petitioner was standing between Buildings 2 and 3. He said that he did not want to be a witness and was present in court only because of a subpoena by the state's attorney's office.
Ford testified during the trial that he was in the courtyard between Buildings 6 and 7 at the time of the shooting on July 19, 1989, but that he did not witness the incident.
Ford had been arrested the day after the shooting and a few days later, while incarcerated, gave Detective Silva of the Bridgeport Police Department a sworn statement that the petitioner shot the victim. In his sworn statement, Ford said the petitioner used a black .357 Magnum weapon. Ford had also testified at the petitioner's probable cause hearing on October 12, 1989, saying that he saw the petitioner shoot the victim.
During the trial, Ford testified that he had lied in his statement to the police and at the probable cause hearing. Ford testified during the trial that he had been threatened not to testify against the petitioner in October, 1989, by the petitioner and his associates, but since that time had not been threatened further. He also testified that the petitioner had told him in October, 1989, to state that the petitioner did not participate in the shooting. Ford also testified that he met with a public defender representing the petitioner before the probable cause hearing on October 12, 1989, and that he told the public defender that the petitioner did not shoot the victim.
Dolores Feliciano testified at the trial on behalf of the petitioner. She testified that she heard gunshots on July 19, 1989, outside her apartment and ran out to bring her children inside. She further testified that she saw the shooting take place between Buildings 6 and 7 near Buildings 2 and 3. She testified that she saw a black man shooting at another black man who was running away.
 II
The petitioner's right to the effective assistance of counsel is assured by the sixth andfourteenth amendments to the United States constitution and by articlefirst, § 8, of the Connecticut constitution. Copas v. Commissioner of Correction,234 Conn. 139, 153, 662 A.2d 718 (1995). To establish that his trial counsel was ineffective, the petitioner must prove both CT Page 8429 that his counsel's performance was deficient and that the petitioner was actually prejudiced by such deficient performance.Strickland v. Washington, 466 U.S. 668, 687, 104 S.Ct. 2052,80 L.Ed.2d 674 (1984); Copas v. Commissioner of Correction, supra,234 Conn. 154; Lozada v. Warden, 223 Conn. 834, 842-43,613 A.2d 818 (1992); Bunkley v. Commissioner of Correction, 222 Conn. 444,445, 610 A.2d 598 (1992). To prove that his counsel's performance was deficient, the petitioner must demonstrate that trial counsel's representation fell below an objective standard of reasonableness. Aillon v. Meachum, 211 Conn. 352, 357,559 A.2d 206 (1989). Competent representation is not representation with no error. "The constitution guarantees only a fair trial and a competent attorney; it does not ensure that every conceivable constitutional claim will be recognized and raised." (Internal quotation marks omitted.) Jeffrey v. Commissioner of Correction,36 Conn. App. 216, 219, 650 A.2d 602 (1994). "Defense counsel's performance must be reasonably competent or within the range of competence displayed by lawyers with ordinary training and skill in the criminal law." (Internal quotation marks omitted.) Johnsonv. Commissioner of Correction, 36 Conn. App. 695, 703,652 A.2d 1050, cert. denied, 233 Conn. 912, 659 A.2d 183 (1995).
With respect to the prejudice component of the Strickland test, the petitioner must demonstrate that "counsel's errors were so serious as to deprive the [petitioner] of a fair trial, a trial whose result is reliable." Strickland v. Washington, supra,466 U.S. 687. Thus, "[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." Id., 691. "It is not enough for the [petitioner] to show that the errors had some conceivable effect on the outcome of the proceeding." Id., 693. Rather, a successful petition is required to demonstrate that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. Copas v.Commissioner of Correction, supra, 234 Conn. 147. A reasonable probability is defined as "a probability sufficient to undermine confidence in the outcome." Strickland v. Washington, supra, 694. Additionally, when a claim of ineffective assistance is made relating to an attorney's duty to investigate and prepare for trial it cannot be claimed that failure to investigate was a strategic decision of counsel. Id.
 III
CT Page 8430
The petitioner claims that trial counsel was ineffective for failing to concentrate on the discrepancies in the testimony of these witnesses regarding the color of the gun held by the petitioner, the location of the witnesses at the time of the shooting, the exact location of the shooting and the fight, the race of the people involved in the fight and whether the petitioner was involved in the fight.
Trial counsel's closing argument focused on the credibility of Carr, Clarke and Ford, the state's three key witnesses. Trial counsel pointed out that Carr gave the police a statement only after Carr was informed he was a target of the investigation. He mentioned that all three had criminal records. Trial counsel also pointed out that Ford was arrested the day after the shooting and was sitting in jail when the police took a statement from him implicating the petitioner in the shooting and was still facing criminal charges when he testified against the petitioner at the probable cause hearing a few months later. Trial counsel also argued that Ford, no longer facing criminal charges, had recanted much of this previous testimony during the trial. Trial counsel pointed out that Clarke had never spoken to the police about the shooting before the trial, was at the apartment complex on the date of the shooting to make sure his drug sellers did not steal his money and currently was the boyfriend of the petitioner's former girlfriend. Trial counsel also told the jury that Clarke was the only one of the "supposed state's three eye witnesses who sees the chrome gun." (Petitioner's Exhibit C, p. 196.)
Trial counsel also reminded the jury that Feliciano had seen a black man shooting the weapon. Trial counsel pointed out that several leads given to the police regarding several black individuals involved in and witness to the fight were never contacted by the police.
The record reveals that trial counsel's strategy was to discredit the three key witnesses testifying for the state and to reveal the police department's inadequate investigation of the shooting. When the jury was deadlocked, a note from the jury panel indicated four jurors did not believe Carr, Clarke and Ford. In the end, however, the jury convicted the petitioner of manslaughter.
The petitioner claims that had trial counsel focused on several specific details, such as the exact location of people and events, the result would have been different. "It is all too CT Page 8431 tempting for a [petitioner] to second-guess counsel's assistance after conviction or adverse sentence, and it is all to easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable." Strickland v. Washington, supra,466 U.S. 689. The court cannot find that trial counsel's failure to emphasize during his closing argument the issues raised by the petitioner was unreasonable or outside the range of competence displayed by lawyers with ordinary skill and training in criminal law. The court finds that the petitioner received effective assistance of counsel as required by our state and federal constitutions.
The petition is dismissed.
Zarella, J.