STATE OF CONNECTICUT *v.* JOAO NUNES
(AC 18808)

Foti, Landau and Stoughton, Js.

Argued February 16—officially released June 20, 2000

*Kent Drager*, senior assistant public defender, for the appellant (defendant).

*Harry Weller*, senior assistant state's attorney, with whom, on the brief, were *James E. Thomas*, state's attorney, and *David Zagaja*, assistant state's attorney, for the appellee (state).

*Opinion*

STOUGHTON, J. The defendant, Joao Nunes, appeals from the judgment of conviction, rendered after a jury trial, of larceny in the third degree in violation of General Statutes § 53a-124.[1] On appeal, the defendant claims that (1) the evidence was insufficient to prove that he knew or should have known that the property was stolen, (2) the evidence was insufficient to prove value, (3) the court improperly excluded certain evidence, (4) the court improperly admitted certain evidence and (5) the court improperly instructed the jury as to the law

---

[1] General Statutes § 53a-124 (a) provides in relevant part: "A person is guilty of larceny in the third degree when he commits larceny as defined in section 53a-119 and . . . (2) the value of the property or service exceeds one thousand dollars . . . ."

General Statutes § 53a-119 provides in relevant part: "A person commits larceny when, with intent to deprive another of property or to appropriate the same to himself or a third person, he wrongfully takes, obtains or withholds such property from an owner. Larceny includes, but is not limited to:

\* \* \*

"(8) Receiving stolen property. A person is guilty of larceny by receiving stolen property if he receives, retains, or disposes of stolen property knowing that it has probably been stolen or believing that it has probably been stolen, unless the property is received, retained or disposed of with purpose to restore it to the owner. A person who accepts or receives the use or benefit of a public utility commodity which customarily passes through a meter, knowing such commodity (A) has been diverted therefrom, (B) has not been correctly registered or (C) has not been registered at all by a meter, is guilty of larceny by receiving stolen property. . . ."

of reasonable doubt. We affirm the judgment of the trial court.

The jury reasonably could have found the following facts from the evidence adduced during the trial. In January, 1994, Air One, Inc. (Air One), operated an aircraft service business in a terminal building and hangar located at Brainard Field in Hartford. Air One also rented office space to a number of tenants, one of whom was the defendant, a Hartford police officer[2] who operated a flight school at Brainard Field at that time. The Air One customer service desk was in the lobby of the terminal, and the manager's office was in a room behind the counter. The defendant's office was on the second floor of the terminal.

On January 30, 1994, Peter Halpin, the general manager of Air One, was informed that the company's air-to-ground radio and case, which had been kept in a locked cabinet behind the service desk, were missing. The radio was a 720 channel Dittel-German FSG-50 transceiver (radio). Halpin observed marks on the cabinet indicating that the door had been forced open. He also noticed that the antenna wire had been cut. He reported the matter to the Hartford police and later informed Lieutenant David Kenary that the radio and case had been stolen. Halpin knew Kenary because Kenary was a student at the defendant's flight school and a frequent visitor at the airport. Halpin described the stolen radio to Kenary, and Kenary obtained a copy of the police report.

On March 11, 1994, Kenary and another police officer executed a search warrant on an unrelated matter at the defendant's residence in Meriden. In the basement of the house, Kenary saw a radio that matched the description of the stolen radio. He seized the radio and,

---

[2] The defendant had been in charge of the systems services unit of the Hartford police department.

on the way back to police headquarters, stopped at Brainard Field to show it to Halpin. Halpin identified it as the radio stolen from the Air One service desk.

At trial, Steven Christino, an avionics expert who had worked on the radio, identified the radio seized from the defendant's residence as the radio that had been stolen from the Air One service desk. Christino, who was experienced in appraising avionics equipment, placed the value of the stolen radio and case at $2200. Christino based his appraisal on the condition of the radio at that time. He set as the value the price that would be paid for the same radio in a similar condition. He used the Aviation Electronics Association Guide, a worldwide publication, and a catalog published by EDMO Distributors, Inc., as references.

## I

The defendant's first claim is that there was insufficient evidence for the jury to have inferred that he knew or should have known that the radio found in his basement had been stolen. The defendant testified that he had bought the radio for $250 from a man who used to hang around the airport but whom he had not seen since the transaction was completed.

When we review a sufficiency of evidence claim, we employ a two part test. We first construe the evidence in the light most favorable to sustaining the verdict. We then determine "whether upon the facts so construed and the inferences reasonably drawn therefrom the jury reasonably could have concluded that the cumulative force of the evidence established guilt beyond a reasonable doubt." (Internal quotation marks omitted.) *State* v. *Potts*, 55 Conn. App. 469, 471, 739 A.2d 1280, cert. denied, 252 Conn. 905, 743 A.2d 616 (1999). In reviewing the defendant's challenge, the relevant inquiry is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact

could have found the essential elements of the crime beyond a reasonable doubt." (Emphasis in original; internal quotation marks omitted.) *State* v. *Scielzo,* 190 Conn. 191, 197, 460 A.2d 951 (1983).

There was ample evidence from which the jury reasonably could have inferred that the defendant knew or should have known that the radio was stolen. His own testimony was that he looked into the value of the radio and, believing that it was worth $750 to $800, paid $250 for it. The price the defendant allegedly paid was far below Christino's estimated value and the defendant's own estimate. An inference that the defendant should have known that the radio had been stolen might have been drawn from that fact if the jury accepted the defendant's claim that he bought the radio. The radio was found in the basement of the defendant's house shortly after it was stolen. It would not easily have been seen by others in that location, and the jury could have inferred that he kept it there because it had been stolen. The antenna wire on the radio had been cut, which would naturally tend to arouse suspicion. Finally, the jury heard evidence that employees at Air One had locked the defendant out of his office and that there had been a dispute between the defendant and Air One.

"A rational person will believe what he regards as probable and disbelieve what he regards as improbable." (Internal quotation marks omitted.) *State* v. *Gabriel,* 192 Conn. 405, 413, 473 A.2d 300 (1984). "Ordinarily, guilty knowledge can be established only through an inference from other proved facts and circumstances. The inference may be drawn if the circumstances are such that a reasonable man of honest intentions, in the situation of the defendant, would have concluded that the property was stolen." *State* v. *Fredericks,* 149 Conn. 121, 124, 176 A.2d 581 (1961). We conclude that the evidence presented to the jury and

the inferences that reasonably might have been drawn therefrom were sufficient to establish beyond a reasonable doubt that the defendant knew or should have known that the radio found in his basement had been stolen.

## II

The defendant next claims that there was insufficient evidence to prove that the market value of the stolen radio exceeded $1000. In testing the sufficiency of the evidence claim, we employ the test enunciated previously in this opinion.

The defendant claims that the only evidence presented regarding the value of the radio was the testimony of Christino and that Christino testified as to the replacement value of the radio rather than the market value of the radio.[3] The defendant further claims, relying on General Statutes § 53a-121 (a) (1),[4] that the state could not properly rely on replacement value unless and until the state claimed and proved that the market value of the radio was not satisfactorily ascertainable.

Section 53a-124 provides, in part, that a person is guilty of larceny in the third degree when he commits larceny and the value of the property exceeds $1000. Section 53a-121 provides, in part, that the value of property is the market value of the property at the time and place of the crime or, if such cannot be satisfactorily ascertained, the cost of replacement within a reasonable time after the crime. "Market value has been defined as the price that would in all probability . . .

---

[3] Christino stated in his testimony that "I wasn't asked to appraise the radio, I was asked to buy another one."

[4] General Statutes § 53a-121 (a) provides in relevant part: "For the purposes of this part, the value of property or services shall be ascertained as follows: (1) Except as otherwise specified in this section, value means the market value of the property or services at the time and place of the crime or, if such cannot be satisfactorily ascertained, the cost of replacement of the property or services within a reasonable time after the crime. . . ."

result from fair negotiations, where the seller is willing to sell and the buyer desires to buy." (Internal quotation marks omitted.) *State* v. *Collette*, 199 Conn. 308, 313, 507 A.2d 99 (1986). "The determination of value is a question for the trier of fact." Id., 314.

Christino testified that in January or February, 1994, he appraised the value of the radio at $2200. In arriving at this appraisal value, Christino relied primarily on two reference guides, the Aviation Electronics Association Guide and a catalog published by EDMO Distributors, Inc. The $2200 appraisal figure was for a used radio. Christino further testified that he did not determine a value on the basis of that particular radio; rather, he based the value on that of another radio of a similar condition.[5]

We conclude, contrary to the claim of the defendant, that Christino's testimony gave the jury a reasonable basis on which it could find that the market value of the radio exceeded $1000. In *State* v. *Collette*, supra, 199 Conn. 314–15, the defendants claimed, as the defendant claims in the present case, that the witness who testified as to value employed a replacement value rather than

---

[5] Christino testified as follows:

"[Assistant States Attorney]: And you utilized that assessment—your own assessment of what the radio's condition was when you placed a value on it?

"[Christino]: That's correct.

"Q. Okay.

"A. Well, I didn't place a radio value on that particular version. I mean, that particular radio. I placed it on another radio to purchase. He was going to buy another one.

"Q. In a similar condition?

"A. Right.

"Q. But you had—

"A. In the same condition.

"Q. You had in your mind what condition this radio was in?

"A. That's correct. I knew what they wanted. I knew what they were looking for.

"Q. And you were familiar with this radio?

"A. Yes."

a market value standard. The expert witness in *Collette*, an experienced professional jeweler and appraiser, testified that he based his appraisal on a " '[c]omparison to what merchandise costs, and whether it's used and how much depreciation it has.' " Id., 315. The witness further testified that the appraisal was based on what he thought he could get as a fair price and that these estimates were based on the retail value of the items. Id. Reviewing the witness' testimony as a whole, the court concluded that the jury reasonably could have found that he appraised the items at market value. Id. Similarly, in *State* v. *Perez*, 5 Conn. App. 129, 132, 497 A.2d 82 (1985), the state's expert witness, a gemologist, testified as to the fair market value of stolen items. On cross-examination, the witness testified that "this was replacement value not as new, but the cost of going out and buying the items 'as is.' " Id. The defendant claimed that the appraisal was based on replacement cost and not on market value. Id. We concluded in *Perez* that the witness had testified as to market value. Id., 133.

On the basis of the foregoing, we conclude that there was sufficient evidence for the jury to conclude that the market value of the radio exceeded $1000.

III

The defendant claims next that the court improperly failed to admit into evidence the price listing for a different model Dittel radio from the 1992 Aircraft Owners and Pilots Association Guide (AOPA guide), which he indicated he had used in determining the value of the stolen radio when he bought it.

The trial court determines the relevancy of evidence within its broad discretion. "The proffering party bears the burden of establishing the relevance of the offered evidence. Unless a proper foundation is established, the evidence is irrelevant." (Internal quotation marks omitted.) *State* v. *Orhan*, 52 Conn. App. 231, 246, 726

A.2d 629 (1999). Decisions on whether a proper foundation has been laid are evidentiary and, therefore, not constitutional in nature. *State* v. *Farrar*, 7 Conn. App. 149, 158–59, 508 A.2d 49, cert. denied, 200 Conn. 805, 512 A.2d 229 (1986).

The defendant offered into evidence a page from the AOPA guide on which the value of a different model Dittel radio model was listed at $1570. The defendant testified that the model Dittel radio that had been stolen was not manufactured after 1992 and that this different model was the closest available. The court sustained the state's objection to the admissibility of the evidence because the defendant had failed to establish an adequate foundation for its relevancy. The defendant subsequently testified, however, that he had used the AOPA guide and other sources to determine that the market value of the model Dittel radio like the one that had been stolen was between $750 and $800, and that he considered a purchase price of $250 a good deal.

Contrary to the defendant's claim, we cannot say that the court abused its wide discretion in refusing to admit into evidence the page from the AOPA guide. The AOPA guide did not show the value of the same model radio as the one that had been stolen, nor did it show the value of the stolen case in which the radio was found and which Christino testified was as valuable as the radio. We further note that although the page from the AOPA guide was not admitted into evidence, the defendant testified that he consulted that source in arriving at a value of $750 to $800 for the stolen radio. The information, therefore, was before the jury.

IV

The defendant next claims that the court improperly denied his motion in limine to preclude the state from impeaching his testimony by referring to his previous conviction for robbery. We disagree with the defendant.

The following facts are necessary for the resolution of this claim. Prior to the trial, the defendant filed a motion in limine to limit the state's ability to impeach him with evidence of his prior convictions. The court ruled that evidence of two of the defendant's prior convictions was admissible as convictions for unnamed felonies, and that the state would be allowed to refer to the defendant's robbery conviction for the limited purpose of impeaching the defendant.[6] Thereafter, the defendant testified on direct examination that he had been convicted of robbery and two unnamed felonies. The defendant claims that, as used by the prosecutor, the prejudicial impact of the evidence of the robbery conviction outweighed its probative value.

"Where . . . the prior convictions bear directly on the veracity of the defendant-witness, the trial court's decision denying a motion to exclude [the] witness' prior record, offered to attack his credibility, will be upset only if the court abused its discretion." (Internal quotation marks omitted.) State v. Thomas, 15 Conn. App. 197, 205, 543 A.2d 1356 (1988). "[C]rimes involving larcenous intent imply a general disposition toward dishonesty . . . [and they] obviously bear heavily on the credibility of one who has been convicted of them." (Internal quotation marks omitted.) State v. Dawkins, 42 Conn. App. 810, 819–20, 681 A.2d 989, cert. denied, 239 Conn. 932, 683 A.2d 400 (1996).

The defendant claims that prejudice resulting from the similarity between the prior robbery conviction and the crime charged outweighed the probative value of the evidence of the prior crime, particularly in light of the prosecutor's argument to the jury that it establishes

[6] The court ruled, however, that the state was precluded from using the term bank with regard to the robbery conviction. The court also granted the defendant's request for a curative instruction.

a certain disposition not to tell the truth. The defendant, however, never objected to the prosecutor's statements to the jury. Moreover, the court instructed the jury that the robbery conviction could be considered for the limited purpose of evaluating the defendant's credibility. The defendant did not offer a request to charge on the subject and did not except to this charge as given. We find no abuse of discretion in the ruling of the court.

## V

Finally, the defendant claims that the court improperly instructed the jury on the law of reasonable doubt.[7] Because the defendant did not preserve this issue at trial, review is limited to the precepts articulated in

[7] Specifically, the defendant claims that the following language from the court's instruction improperly diluted the state's burden of proof. "[W]hat does this mean, beyond a reasonable doubt? That phrase has no technical or unusual meaning. And you can arrive at the true meaning of it by emphasizing the word 'reasonable.' The test, then, is one of reasonable doubt. A reasonable doubt is a doubt from which a *valid reason can be assigned.* It's a doubt which is something more than a guess or a surmise. As the jury will remember that the defendant is never to be convicted on mere suspicion or conjecture. A reasonable doubt is not a fanciful doubt. A reasonable doubt is not a doubt which is raised by someone merely for the sake of raising doubt, nor is it a doubt which is not justified by the evidence or lack of evidence. A reasonable doubt is a doubt based on reason and common sense, *not on the mere possibility of innocence.* It is a doubt for which you can, in your own mind, conscientiously give a reason.

"A reasonable doubt, in other words, is *a real doubt. An honest doubt.* A doubt which has its foundation in the evidence or lack of evidence. It is the kind of doubt that would make a reasonable person hesitate to act. Proof beyond a reasonable doubt, therefore, must be proof of such a convincing character that a reasonable person would not hesitate . . . to rely and act upon it *in the most important of his own affairs. . . .* Proof beyond a reasonable doubt, then, is proof which leaves you *firmly convinced* of the defendant's guilt. I wish to impress upon each of you that before you may reach any verdict of guilty each of you must consider the evidence and become *firmly convinced* that the defendant, Mr. Nunes, is guilty of the crime charged before you can find him guilty. If, on the other hand, you are not firmly convinced that he is guilty you must give him the benefit of the doubt and find him not guilty." (Emphasis added.)

*State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989).[8]

The defendant concedes that some of his claims have been rejected by our Supreme Court, that is, his claims that the court improperly instructed the jury that reasonable doubt is a real doubt or an honest doubt; *State* v. *Hines*, 243 Conn. 796, 817–18, 709 A.2d 522 (1998); and that proof beyond a reasonable doubt must be proof of such a convincing character that "a reasonable person would not hesitate . . . to rely and act upon it in the most important of his own affairs." See *State* v. *Morant*, 242 Conn. 666, 688, 701 A.2d 1 (1997). We note that "[i]t is not . . . within our province to overrule or discard the decisions of our Supreme Court." (Internal quotation marks omitted.) *State* v. *Markeveys*, 56 Conn. App. 716, 722, 745 A.2d 212, cert. denied, 252 Conn. 953, 749 A.2d 1203 (2000).

In addition to the claims that he concedes have been rejected by the Supreme Court, the defendant challenges the court's statements that proof beyond a reasonable doubt means that the jury must be "firmly convinced" that the defendant is guilty of the crime charged. We will review this claim because the record is adequate for review and the defendant alleges the violation of a fundamental constitutional right. See *State* v. *Morant*, supra, 242 Conn. 687. We conclude, however, that the alleged constitutional violation did not clearly exist and did not deprive the defendant of a fair trial.

---

[8] Under *Golding*, "a defendant can prevail on a claim of constitutional error not preserved at trial only if *all* of the following conditions are met: (1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation clearly exists and clearly deprived the defendant of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt." (Emphasis in original.) *State* v. *Golding*, supra, 213 Conn. 239–40.

We do not agree that the instruction that proof beyond a reasonable doubt is proof that leaves the members of the jury firmly convinced of the defendant's guilt dilutes the state's burden of proof. It clearly informs the members of the jury that they must be convinced by more than a preponderance of the evidence and, considered in conjunction with the court's instructions in their entirety, did not diminish the state's burden of proof.

The judgment is affirmed.

In this opinion the other judges concurred.