# STATE OF CONNECTICUT *v.* JEFFREY JACKSON
## (SC 17646)

Borden, Norcott, Katz, Palmer and Vertefeuille, Js.

Argued April 13—officially released July 10, 2007

*Proloy K. Das*, assistant state's attorney, with whom, on the brief, were *Michael Dearington*, state's attorney, and *Stacey M. Haupt*, assistant state's attorney, for the appellant (state).

*Neal Cone*, senior assistant public defender, for the appellee (defendant).

*Opinion*

KATZ, J. The defendant, Jeffrey Jackson, appealed to the Appellate Court from the judgment of conviction, rendered after a jury trial, of possession of narcotics in violation of General Statutes § 21a-279 (a), raising as the sole claim that the trial court's jury instruction as to "reasonable doubt" improperly had diluted the state's burden of proof. The Appellate Court agreed with the defendant's claim, reversing the judgment of the trial court and ordering a new trial. *State* v. *Jackson*, 93 Conn. App. 671, 672, 890 A.2d 586 (2006). Thereafter, we granted the state's petition for certification to appeal, limited to the following issue: "Did the Appellate Court properly conclude that the trial court's jury instruction regarding proof beyond a reasonable doubt was constitutionally infirm?" *State* v. *Jackson*, 278 Conn. 902, 896 A.2d 105 (2006). We conclude that the Appellate Court's

determination that the instruction on reasonable doubt impermissibly diluted the state's burden of proof was improper, and, accordingly, we reverse its judgment.

The Appellate Court's opinion sets forth the following relevant facts and procedural history. "On May 3, 2002, while incarcerated at the New Haven correctional center, the defendant underwent two strip searches after a correctional officer received information from informants that the defendant was in possession of narcotics. A correctional officer, while searching the defendant a second time, found a substance in his sock that later tested positive for cocaine. At trial, the court instructed the jury regarding reasonable doubt as follows: 'The state has the burden of proving each and every element necessary to constitute . . . the crime charged. And I'll instruct on those elements later in my charge. The defendant does not have to prove his innocence in any way or present any evidence to disprove the charge against him. The state has the burden of proving the defendant's guilt beyond a reasonable doubt. Some of you may be aware that in civil cases jurors are told that it's only necessary to prove that a fact is more likely true than not true. In criminal cases, the state's proof must be more powerful than that: It must be beyond a reasonable doubt.

" 'Proof beyond a reasonable doubt is proof that leaves you firmly convinced of the defendant's guilt. There are very few things in the world that we know with absolute certainty, and in criminal law cases, the law does not require proof that overcomes every possible doubt. If, based on your consideration of the evidence, you are firmly convinced that the defendant is guilty of the crime charged, you must find him guilty. If, on the other hand, based on the evidence or lack of evidence, you have a reasonable doubt as to the defendant's guilt, you must give him the benefit of that

doubt and find him not guilty.' " *State* v. *Jackson*, supra, 93 Conn. App. 673.

The record reveals the following additional facts and procedural history. After the trial court's instruction, the defendant took exception to the reasonable doubt charge on the ground that it "differ[ed] from the standard reasonable doubt charge that is routinely given by the court" because it did not describe a reasonable doubt as a "doubt which would cause you as reasonable and prudent men and women to hesitate to act in the more weighty and important matters relating to your affairs."

The trial court acknowledged that the charge differed from the standard instructions and made the following observation: "[Y]our exception is noted, sir. And I wish to make a brief statement for the record in the hypothetical event that my charge would be reviewed by either the Appellate or Connecticut Supreme Court or indeed any other court; that is, counsel is correct that the charge just given does differ in some respects from the charge, I would say, typically given on reasonable doubt in the Connecticut courts and designedly so.

"I am convinced, after [fourteen] years of being a judge and many years of practice before that, that the standard reasonable doubt charge in Connecticut is unsatisfactory. It is satisfactory only in the sense that it is routinely upheld by the appellate courts, which is a considerable advantage, to be sure. But over the years I've become convinced that jurors' eyes glaze over when it is given and it is not fully understood and, therefore, does not do adequate justice to the parties and I believe needs to be modernized, simplified, put into plain language but, obviously, appropriate language.

"The charge given by the court is a slight variation of the charge on reasonable doubt recommended by Justice Ginsburg of the Supreme Court of the United

States in *Victor* v. *Nebraska*, 511 U.S. 1, [27, 114 S. Ct. 1239, 127 L. Ed. 2d 583 (1994)]. It is a charge proposed by the Federal Judicial Center in creating criminal jury instructions for the federal courts, and I believe that it is much superior to the charge given.

"I welcome appellate review of the charge and if it is wrong, it is for the Appellate Court to say. If they say that it is wrong, I will respect their judgment, but, respectfully, from a trial judge's perspective, the charge just given is a preferable charge. [A]nd based on my experience as a lawyer, as a trial judge, and based on my conversations with many other trial court judges over the years . . . those are my observations but your exception is noted, sir."

Thereafter, the jury found the defendant guilty, and the court rendered judgment in accordance with the verdict. Following the sentencing, the defendant appealed from the judgment of conviction to the Appellate Court, claiming that the trial court's jury instruction on reasonable doubt improperly had diluted the state's burden of proof. Specifically, he claimed that "the court's instruction that the jury must be 'firmly convinced' of the defendant's guilt, by failing to define further and properly the term 'reasonable doubt,' misled the jury to a finding of guilt by a lesser standard of proof than beyond a reasonable doubt. Because the court failed to distinguish the clear and convincing standard of proof from the standard of proof beyond a reasonable doubt, he also claim[ed] the state's burden of proof was impermissibly diluted." *State* v. *Jackson*, supra, 93 Conn. App. 673.

The Appellate Court agreed with the defendant and reversed the judgment of the trial court. Id., 679. Specifically, the court noted that, "[i]n cases where the language 'a firm conviction of the guilt of the accused' has been approved by our Supreme Court and this court, the

charge also has included language defining reasonable doubt as opposed to possible doubt." Id., 677. The Appellate Court observed that, unlike the federal instruction on which the trial court had modeled its instruction, the court's instruction here "did not point out that a possible doubt is not a reasonable doubt because a reasonable doubt involves a 'real possibility that the defendant was not guilty' and failed to distinguish the burden of proof beyond a reasonable doubt from the burden of proof by clear and convincing evidence." Id., 678. The Appellate Court also expressed concern that the instruction had failed to define reasonable doubt as one "for which a valid reason can be assigned," a definition previously approved by both the United States Supreme Court and this court, which "points out the difference between a fanciful or speculative doubt, which the state's evidence need not overcome, and a real doubt that is based on reason, which the state's evidence must overcome." Id. For these reasons, the Appellate Court concluded that the trial court's instruction had misled the jury into finding "guilt based on a degree of proof below what is constitutionally required" and that the defendant's conviction therefore must be reversed. Id., 679. The state's certified appeal followed.

On appeal to this court, the state contends that the Appellate Court improperly determined that the instruction had diluted the state's burden of proof. We agree.

We begin with our well established jurisprudence. "It is fundamental that proof of guilt in a criminal case must be beyond a reasonable doubt. *In re Winship*, 397 U.S. 358, 364, 90 S. Ct. 1068, 25 L. Ed. 2d 368 (1970) . . . . The [reasonable doubt concept] provides concrete substance for the presumption of innocence—that bedrock axiomatic and elementary principle whose enforcement lies at the foundation of the administration of our criminal law. . . . [Id.], 363. At the same time,

by impressing upon the [fact finder] the need to reach a subjective state of near certitude of the guilt of the accused, the [reasonable doubt] standard symbolizes the significance that our society attaches to the criminal sanction and thus to liberty itself. *Jackson* v. *Virginia*, [443 U.S. 307, 315, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979)]. [Consequently, the defendant] in a criminal case [is] entitled to a clear and unequivocal charge by the court that the guilt of the [defendant] must be proved beyond a reasonable doubt. . . .

"In determining whether a trial court's charge satisfies constitutional requirements, however, individual jury instructions should not be judged in artificial isolation, but must be viewed in the context of the overall charge. . . . The pertinent test is whether the charge, read in its entirety, fairly presents the case to the jury in such a way that injustice is not done to either party under the established rules of law. . . . Thus, [t]he whole charge must be considered from the standpoint of its effect on the [jurors] in guiding them to the proper verdict . . . and not critically dissected in a microscopic search for possible error. . . . Accordingly, [i]n reviewing a constitutional challenge to the trial court's instruction, we must consider the jury charge as a whole to determine whether it is reasonably possible that the instruction misled the jury." (Internal quotation marks omitted.) *State* v. *Reynolds*, 264 Conn. 1, 105–106, 836 A.2d 224 (2003), cert. denied, 541 U.S. 908, 124 S. Ct. 1614, 158 L. Ed. 2d 254 (2004).

The words "reasonable doubt" are a time honored hallmark of criminal jurisprudence; "[t]he perfect definition of 'reasonable doubt,' however, is as uncertain as its place in American jurisprudence is certain." *Chalmers* v. *Mitchell*, 73 F.3d 1262, 1266 (2d Cir.), cert. denied, 519 U.S. 834, 117 S. Ct. 106, 136 L. Ed. 2d 60 (1996). Aside from imposing the general standard of reasonable doubt as a constitutional mandate, the

United States Supreme Court has not provided a clear and simple definition, expressing instead a reluctance to impose a specific jury instruction. Indeed, the court has explained that "the [c]onstitution does not require that any particular form of words be used in advising a jury of the government's burden of proof." *Victor* v. *Nebraska*, supra, 511 U.S. 5. As a consequence, the major constraint on trial courts that formulate reasonable doubt instructions is that they avoid certain language that categorically has been rejected. See, e.g., *Cage* v. *Louisiana*, 498 U.S. 39, 41, 111 S. Ct. 328, 112 L. Ed. 2d 339 (1990) (instruction equating reasonable doubt with " 'grave uncertainty' " and " 'actual substantial doubt' " *coupled with* phrase " 'to a moral certainty' " impermissibly suggested higher degree of doubt than is required for acquittal under reasonable doubt standard). Similarly, since the Supreme Court's decision in *Victor*, absent circumstances wherein this court has deemed it appropriate to invoke our supervisory authority over the administration of justice to proscribe the use of certain questionable language; see, e.g., *State* v. *Griffin*, 253 Conn. 195, 209–10, 749 A.2d 1192 (2000) (prohibiting future use of "two inference" language); *State* v. *Delvalle*, 250 Conn. 466, 473–76, 736 A.2d 135 (1999) (prohibiting future use of "a doubt suggested by the ingenuity of counsel" language); *State* v. *Schiappa*, 248 Conn. 132, 168, 728 A.2d 466 (prohibiting future use of language that "a rule of law . . . made to protect the innocent and not the guilty" [internal quotation marks omitted]), cert. denied, 528 U.S. 862, 120 S. Ct. 152, 145 L. Ed. 2d 129 (1999); the court generally has left the formation of an appropriate reasonable doubt instruction to the discretion of the trial court.

In the present case, the defendant's claim before the Appellate Court focused on the trial court's use of the phrase "firmly convinced," which he claimed had

diluted the state's burden of proof from a beyond a reasonable doubt standard to a clear and convincing evidence standard. Although both this court and the Appellate Court have approved similar language; see *State* v. *Ferguson*, 260 Conn. 339, 370, 796 A.2d 1118 (2002); *State* v. *Nunes*, 58 Conn. App. 296, 309, 752 A.2d 93, cert. denied, 254 Conn. 944, 762 A.2d 906 (2000); the Appellate Court concluded that the instructions in the present case were constitutionally infirm because they failed also to include other explanatory phrases. Specifically, the Appellate Court pointed to the fact that the trial court did not utilize the language in the federal model instruction defining a reasonable doubt as a "real possibility [that the defendant] is not guilty"; Federal Judicial Center, Modern Federal Jury Instructions: Criminal Pattern Jury Instructions (1991), Instruction 21, p. FJC-18;[1] or present an alternative definition of a reasonable doubt approved by the United States Supreme Court as "a real doubt for which a valid reason can be assigned," which points out the difference "between a fanciful or speculative doubt, which the state's evidence need not overcome, and a real doubt

[1] The federal model instruction, the second paragraph of which is at issue in this case, provides in its entirety: "[T]he government has the burden of proving the defendant guilty beyond a reasonable doubt. Some of you may have served as jurors in civil cases, where you were told that it is only necessary to prove that a fact is more likely true than not true. In criminal cases, the government's proof must be more powerful than that. It must be beyond a reasonable doubt.

"Proof beyond a reasonable doubt is proof that leaves you firmly convinced of the defendant's guilt. There are very few things in this world that we know with absolute certainty, and in criminal cases the law does not require proof that overcomes every possible doubt. If, based on your consideration of the evidence, you are firmly convinced that the defendant is guilty of the crime charged, you must find him guilty. If on the other hand, you think there is a real possibility that he is not guilty, you must give him the benefit of the doubt and find him not guilty." Federal Judicial Center, supra, pp. FJC-17 through FJC-18; see also D. Borden & L. Orland, 5 Connecticut Practice Series: Connecticut Criminal Jury Instructions (2001) § 2.10, pp. 132–33 (providing alternate instruction of reasonable doubt that incorporates Federal Judicial Center's pattern instruction).

that is based on reason, which the state's evidence must overcome." *State* v. *Jackson*, supra, 93 Conn. App. 678. We disagree with the Appellate Court that, by using the phrase "firmly convinced" without further explanation, the instructions failed to distinguish the burden of proof beyond a reasonable doubt from the burden of proof by clear and convincing evidence.

First, we note that the "firmly convinced" charge that was given in this case was derived from, and is nearly identical to, the pertinent part of the model instruction on reasonable doubt developed by a committee of federal judges on behalf of the Federal Judicial Center. See footnote 1 of this opinion. That model instruction has been endorsed by a number of state and federal courts. See, e.g., *United States* v. *Conway*, 73 F.3d 975, 980 (10th Cir. 1995) (instruction "copied virtually verbatim" from Federal Judicial Center's instructions was "correct and comprehensible statement of the reasonable doubt standard"); *United States* v. *Williams*, 20 F.3d 125, 128 (5th Cir.) (noting that Fifth Circuit previously has endorsed pertinent section of Federal Judicial Center's instruction as constitutionally sufficient and declining to find it improper under court's supervisory authority), cert. denied sub nom. *Mullins* v. *United States*, 513 U.S. 894, 115 S. Ct. 246, 130 L. Ed. 2d 168 (1994); *State* v. *Portillo*, 182 Ariz. 592, 596, 898 P.2d 970 (1995) (invoking court's supervisory authority requiring Arizona trial courts prospectively to give Federal Judicial Center's instruction because it "most fairly and accurately conveys the meaning of reasonable doubt"); *Winegeart* v. *State*, 665 N.E.2d 893, 902 (Ind. 1996) (recommending that Indiana courts use Federal Judicial Center's instruction); see also *State* v. *Merwin*, 131 Idaho 642, 647–48, 962 P.2d 1026 (1998) (concluding that trial court's substitution of Federal Judicial Center instruction for Idaho model instruction was not constitutional error, but directing trial courts to use Idaho

model); *State* v. *Putz*, 266 Neb. 37, 47–49, 662 N.W.2d 606, cert. denied, 540 U.S. 1016, 124 S. Ct. 568, 157 L. Ed. 2d 429 (2003) ("firmly convinced" language in context with remainder of charge adequately conveys standard of reasonable doubt); *State* v. *Darby*, 324 S.C. 114, 115–16, 477 S.E.2d 710 (1996) (concluding that trial court's instruction following federal instruction was not improper). Indeed, as a general matter, instructions describing proof beyond a reasonable doubt in terms of the jury's responsibility to be "firmly convinced" of the defendant's guilt before rendering a guilty verdict routinely have been accepted as constitutionally sufficient, even if they do not utilize the Federal Judicial Center's proposed charge verbatim. See, e.g., *Mills* v. *State*, 732 A.2d 845, 852–53 (Del. 1999) (instruction correctly conveyed concept of reasonable doubt and comported with due process); *State* v. *Harris*, 870 S.W.2d 798, 811 (Mo.) (" '[f]irmly convinced' is essentially synonymous with 'beyond a reasonable doubt' "), cert. denied, 513 U.S. 953, 115 S. Ct. 371, 130 L. Ed. 2d 323 (1994); but see *State* v. *Perez*, 90 Haw. 113, 128–29, 976 P.2d 427 (App. 1998) (concluding that "firmly convinced" suggests lesser burden than beyond reasonable doubt), aff'd in part, 90 Haw. 65, 976 P.2d 379 (1999).[2] Additionally, numerous commentators have endorsed the "firmly convinced" charge and recommended it as an accurate description of the reasonable doubt standard. See, e.g., A. Minhas, "Proof Beyond a Reasonable

---

[2] Hawaii appears to be the only jurisdiction that has concluded that an instruction that the jury must be "firmly convinced" of the defendant's guilt in order to convict is constitutional error, but it did so on the basis of the due process clause under its state constitution after noting the federal authority to the contrary. See *State* v. *Perez*, supra, 90 Haw. 128–29. The Hawaii Appellate Court reasoned that "the term 'firmly convinced' is so like the term 'firm belief of conviction' that is associated in the law with the lesser burden of clear and convincing evidence, as to communicate something less than the highest burden under the law, that of '*beyond* a reasonable doubt.' " (Emphasis in original.) Id., 129. For the reasons set forth in this opinion, we reject this reasoning.

Doubt: Shifting Sands of a Bedrock?" 23 N. Ill. U. L. Rev. 109, 128–29 (Spring 2003); L. Solan, "Refocusing the Burden of Proof in Criminal Cases: Some Doubt About Reasonable Doubt," 78 Tex. L. Rev. 105, 147 (1999); R. Power, "Reasonable and Other Doubts: The Problem of Jury Instructions," 67 Tenn. L. Rev. 45, 85 (1999).

Although the trial court did not further define reasonable doubt as a "real possibility," as does the model definition, that omission did not convert the state's burden of proof to one of clear and convincing evidence or suggest to the jury that something less than proof beyond a reasonable doubt was sufficient.[3] See *United*

---

[3] We find ironic the Appellate Court's criticism of the trial court's instruction in the present case as deficient because it failed to include the language in the Federal Judicial Center's model instruction defining a reasonable doubt as a "real possibility [that the defendant] is not guilty," in light of the fact that other courts have cautioned that the use of this phrase actually may create confusion about the meaning of reasonable doubt and impermissibly shift the burden of proof to the defendant. See, e.g., *United States* v. *McBride*, 786 F.2d 45, 51–52 (2d Cir. 1986) ("As for the [D]istrict [C]ourt's use of the 'real possibility' language, found in Federal Judicial Center Committee to Study Criminal Jury Instructions, Pattern Criminal Jury Instructions § 21, p. 28 [1982], in its proposed instruction relating to the reasonable doubt standard, we suggest caution in the use of such language as it may provide a basis for confusion and may be misinterpreted by jurors as unwarrantedly shifting the burden of proof to the defense. While we would agree with the appellant that the 'hesitate to act' language suggested in 1 [E.] Devitt & [C.] Blackmar, Federal Jury Practice [and] Instructions § 11.14 [3d Ed. 1979] and included in the Federal Judicial Center Committee to Study Criminal Jury Instruction, Pattern Criminal Jury Instructions 6 [1985] would be preferable, we do not find that the use of the 'real possibility' language in this case constituted reversible error."); *United States* v. *Porter*, 821 F.2d 968, 973 (4th Cir. 1987) ("The [D]istrict [C]ourt's instruction in this case illustrates the confusion that is engendered by attempting to define a reasonable doubt in terms of a 'real possibility' that the accused is not guilty. The [D]istrict [C]ourt did not explain the difference that it perceived between a 'possibility' and a 'real possibility.' It failed to tell the jury that the accused did not have the burden of showing a 'real possibility' of innocence. Implying the evidence must show a real possibility of innocence to justify acquittal trenches on the principle that a defendant is presumed to be innocent."); see also *United States* v. *Taylor*, 997 F.2d 1551, 1557 (D.C. Cir. 1993) (rejecting defendant's claim that inclusion of "real possibility" language impermissibly diluted state's burden of proof).

*States* v. *Brand*, 80 F.3d 560, 566 (1st Cir. 1996) (rejecting claim that "firmly convinced" language "suggests a burden of proof akin to the civil 'clear and convincing' standard"); *United States* v. *Taylor*, 997 F.2d 1551, 1557 (D.C. Cir. 1993) (rejecting claim that "instructing jurors that they must be 'firmly convinced' of a defendant's guilt lowers the government's burden of proof"); *United States* v. *Hunt*, 794 F.2d 1095, 1100–1101 (5th Cir. 1986) (concluding that "firmly convinced" adequately conveys "beyond a reasonable doubt" standard); see also *United States* v. *Williams*, supra, 20 F.3d 131 (first concluding that "firmly convinced" instruction properly conveyed burden of proof and then rejecting defendant's challenge to "real possibility" language because that language enhanced "firmly convinced" instruction); *United States* v. *Barrera-Gonzales*, 952 F.2d 1269, 1272–73 (10th Cir. 1992) (first concluding that "firmly convinced" language was not improper, although " 'hesitate to act' " instruction preferable, and then rejecting defendant's challenge to "real possibility" language on ground that it is similar to permissible "real doubt" language). We find the Appellate Court's concern, that lay jurors, whom we know generally are unfamiliar with the three tiers of burden of proof in our jurisprudence, when hearing the firmly convinced language somehow would equate it with the "clear and convincing standard," to be unfounded. First, jurors typically lack the familiarity with the clear and convincing standard of proof that would give rise to the risk that they would equate the "convinced" language with that intermediate burden of proof. Second, even if some jurors are aware of the clear and convincing standard, that standard would require only a "high probability"; *Briggs* v. *McWeeny*, 260 Conn. 296, 323, 796 A.2d 516 (2002); not that they be "firmly convinced" of the defendant's guilt in order to convict. See *Washington* v. *Burkett*, 129 Wash. App. 1004, 2005 Wash. App. LEXIS

2083 (2005) (concluding that no confusion between reasonable doubt instruction of "firmly convinced" and clear and convincing standard "is likely in Washington, where to establish proof by clear, cogent, and convincing evidence, the ultimate fact in issue must be shown to be 'highly probable' "). Indeed, the juxtaposition in the present case of the two concepts, "firm conviction" and "a reasonable doubt," made it abundantly clear that proof beyond a reasonable doubt requires more that a "high probability" that the state's allegations were true.[4] The instruction properly informed the jury that the standard in criminal cases mandates a "firm conviction" of guilt that is devoid of any rational basis for questioning the truth of the allegations.

Moreover, the trial court's additional instruction in this case—"[i]f, on the other hand, based on the evidence or lack of evidence, you have a reasonable doubt as to the defendant's guilt, you must give him the benefit of that doubt and find him not guilty"—explained to the jury that, should it harbor any reasonable doubt about the defendant's guilt, it was obligated to afford the benefit of that doubt to the defendant and acquit him.[5] On the basis of the instructions, taken as a whole;

---

[4] We note that some studies have indicated that the "firmly convinced" instruction "fares significantly better than other possible definitions in appropriately signaling to jurors that beyond a reasonable doubt establishes a high threshold for conviction." E. Stoffelmayr & S. Diamond, "The Conflict Between Precision and Flexibility in Explaining 'Beyond a Reasonable Doubt,' " 6 Psychol. Pub. Policy & L. 769, 773 (2000). Other studies have shown that "the firmly convinced standard comes closest to meeting the stated values underlying the notion of proof beyond a reasonable doubt." L. Solan, supra, 78 Tex. L. Rev. 128. In addition, experiments performed with various reasonable doubt instructions, demonstrated that the "firmly convinced instruction . . . was considered more demanding than the corresponding federal clear and convincing evidence standard . . . ." Id., 129.

[5] In light of criticism that has been raised about the "real possibility" language included in the Federal Judicial Center's instruction shifting the burden to the defense; see footnotes 1 and 3 of this opinion; the trial court's decision not to use that language in the present case hardly can be faulted. We suspect that the trial court, obviously well versed in the debate, chose to omit that language and tailor the instructions to resolve the burden shifting

see *State* v. *Reynolds*, supra, 264 Conn. 105–106; we conclude that the jury in the present case properly was informed that, if it was firmly convinced of the defendant's guilt based on the evidence, then it did not harbor any reasonable doubt about that guilt.

The test we apply in evaluating the constitutionality of a reasonable doubt instruction is not whether we find it exemplary; rather, we inquire only whether there is a "reasonable likelihood that the jury understood the [instruction] to allow conviction based on proof insufficient to meet" the reasonable doubt standard. *Victor* v. *Nebraska*, supra, 511 U.S. 6. Although we have concluded in the present case that the instruction properly set forth a constitutionally sufficient description of the state's burden, we nevertheless take this opportunity to acknowledge that "[c]omposing a perfect definition of reasonable doubt may be an illusory goal, but perfection and certitude are rare in any intellectual discipline whether it be scientific or humanistic." *United States* v. *Williams*, supra, 20 F.3d 132. As we previously have remarked, "[a]ttempts to explain the term 'reasonable doubt' do not usually result in making it any clearer to the minds of the jury. *Miles* v. *United States*, 103 U.S. 304, 312, 26 L. Ed. 481 (1880)." (Internal quotation marks omitted.) *State* v. *Lemoine*, 256 Conn. 193, 204, 770 A.2d 491 (2001); accord *State* v. *Griffin*, 253 Conn. 195, 209 n.15, 749 A.2d 1192 (2000) ("We wish to underscore the fact that, [a]lthough [the reasonable doubt] standard is an ancient and honored aspect of our criminal justice system, it defies easy explication. *Victor* v. *Nebraska*, supra, [5]. Indeed, [w]e have recognized that [a]ttempts to explain the term reasonable doubt do not usually result in making it any clearer to the minds of the jury. . . . We have further noted that

concerns by reinforcing for the jury that, if they "have a reasonable doubt as to the defendant's guilt, [they] must give him the benefit of that doubt and find him not guilty."

[j]udicial attempts to clarify the meaning of the phrase reasonable doubt by explanation, elaboration or illustration . . . more often than not tend to confuse or mislead. . . . Thus, we have repeatedly stated that attempts to clarify reasonable doubt should be avoided because they often tend to obfuscate that concept." [Citations omitted; internal quotation marks omitted.]); *State* v. *Faust*, 237 Conn. 454, 476, 678 A.2d 910 (1996) (similarly cautioning about attempts to clarify meaning of "reasonable doubt"); *State* v. *Webb*, 238 Conn. 389, 457, 680 A.2d 147 (1996) (same), aff'd after remand, 252 Conn. 128, 750 A.2d 448, cert. denied, 531 U.S. 835, 121 S. Ct. 93, 148 L. Ed. 2d 53 (2000); *State* v. *Figueroa*, 235 Conn. 145, 184, 665 A.2d 63 (1995) (same); *State* v. *Marra*, 222 Conn. 506, 536, 610 A.2d 1113 (1992) (same); *State* v. *Butler*, 207 Conn. 619, 636–37, 543 A.2d 270 (1988) (same); *State* v. *DelVecchio*, 191 Conn. 412, 420, 464 A.2d 813 (1983) (same). Therefore, we do not fault the trial court in the present case for not defining the phrase reasonable doubt as proposed by the Federal Judicial Center as a "real possibility that the defendant is not guilty," which the Appellate Court cited to as a basis for its decision reversing the judgment in the present case; nor do we fault the trial court for failing to define expressly the term reasonable doubt.

Having said that, however, we note that our appellate courts previously have approved many attempts to define that term. See, e.g., *State* v. *Lemoine*, supra, 256 Conn. 193 (reasonable doubt is "a real doubt, an honest doubt" [internal quotation marks omitted]); *State* v. *Reynolds*, supra, 264 Conn. 104 (reasonable doubt is "the kind of doubt which in the serious affairs which concern you in everyday life you would pay heed to and attention to" [internal quotation marks omitted]); *State* v. *Ferguson*, supra, 260 Conn. 369 ("[a reasonable doubt] is such a doubt that as in the serious affairs of every day life you would pay heed to" [internal quota-

tion marks omitted]); *State* v. *Colon*, 28 Conn. App. 231, 240–41, 611 A.2d 902 ("reasonable doubt [is] one which a person 'would pay some heed to' in his or her daily affairs"), cert. denied, 223 Conn. 922, 614 A.2d 827 (1992). Moreover, we never have held that the concept of reasonable doubt is undefinable, or that trial courts should not, as a matter of course, provide a definition. As the foregoing discussion illustrates, there is no mandatory or talismanic phraseology that if spoken will render the instruction constitutionally sufficient. "[E]ven if definitions of reasonable doubt are necessarily imperfect, the alternative—refusing to define the concept at all—is not obviously preferable." *Victor* v. *Nebraska*, supra, 511 U.S. 26 (Ginsberg, J., concurring). Therefore, we encourage our trial judges to exercise their reasoned discretion, as did Judge Blue in the present case, to fashion a proper instruction. Reference to the Federal Judicial Center's instruction in the present case was appropriate, and we particularly cite with approval the New Jersey Supreme Court's instruction attempting to improve upon that model federal charge.[6]

---

[6] The instruction adopted by the New Jersey Supreme Court provides: "The government has the burden of proving the defendant guilty beyond a reasonable doubt. Some of you may have served as jurors in civil cases, where you were told that it is necessary to prove only that a fact is more likely true than not true. In criminal cases, the government's proof must be more powerful than that. It must be beyond a reasonable doubt.

"A reasonable doubt is an honest and reasonable uncertainty in your minds about the guilt of the defendant after you have given full and impartial consideration to all of the evidence. A reasonable doubt may arise from the evidence itself or from a lack of evidence. It is a doubt that a reasonable person hearing the same evidence would have.

"Proof beyond a reasonable doubt is proof, for example, that leaves you firmly convinced of the defendant's guilt. In this world, we know very few things with absolute certainty. In criminal cases the law does not require proof that overcomes every possible doubt. If, based on your consideration of the evidence, you are firmly convinced that the defendant is guilty of the crime charged, you must find him guilty. If, on the other hand, you are not firmly convinced of [the] defendant's guilt, you must give [the] defendant the benefit of the doubt and find him not guilty." *State* v. *Medina*, 147 N.J. 43, 61, 685 A.2d 1242 (1996), cert. denied, 520 U.S. 1190, 117 S. Ct. 1476, 137 L. Ed. 2d 688 (1997). We note, however, that although we endorse the

See *State* v. *Medina*, 147 N.J. 43, 61, 685 A.2d 1242 (1996), cert. denied, 520 U.S. 1190, 117 S. Ct. 1476, 137 L. Ed. 2d 688 (1997).

The judgment of the Appellate Court is reversed and the case is remanded to that court with direction to affirm the trial court's judgment.

In this opinion the other justices concurred.

BORDEN, J., concurring. I agree with and join the majority opinion, with one exception. I do not agree with the majority's specific approval of the reasonable doubt instruction adopted by the New Jersey Supreme Court in *State* v. *Medina*, 147 N.J. 43, 61, 685 A.2d 1242 (1996), cert. denied, 520 U.S. 1190, 117 S. Ct. 1476, 137 L. Ed. 2d 688 (1997).

First, neither party brought that instruction to the attention of this court in the present case. Thus, the majority has approved that instruction without the parties having briefed it.

Second, and more important, I do not think that this court should, as a general matter and especially in the problematic area of the concept of reasonable doubt, be in the business of drafting specific instructions for trial courts. We do our appellate job better by doing what we ordinarily do, namely, reviewing instructions given by trial courts in the context of specific cases and deciding whether they meet the specific legal challenge presented by the parties. We should not start with language that was never employed, such as that adopted by the New Jersey Supreme Court, and then determine, in a litigation vacuum, that that language ought to be what judges say to jurors.

New Jersey Supreme Court's instruction, unlike that court, we do not hold that failure to give this instruction necessarily will give rise to the risk of reversible error. See id.

In this connection, I acknowledge that this court, in an opinion that I authored for the court, did draft specific instruction language in *State* v. *Ledbetter*, 275 Conn. 534, 579–80, 881 A.2d 290 (2005), cert. denied, 547 U.S. 1082, 126 S. Ct. 1798, 164 L. Ed. 2d 537 (2006). In hindsight, I think that this was unwise, and was proven to be so by the fact that, immediately upon the release of that opinion, we were required to issue a replacement page in that opinion amending the previously approved instruction. See id.

For example, consider the language of the New Jersey instruction that a reasonable doubt "is a doubt that a reasonable person hearing the same evidence would have." *State* v. *Medina*, supra, 147 N.J. 61. I can conceive of the state contending that this language is too favorable to the defendant because it could give a juror who votes initially to acquit a basis to say to his or her fellow jurors: "I have this doubt. I am a reasonable person who heard the same evidence as you did. Therefore, according to the judge's instructions, it is a reasonable doubt, and you all have to respect it." End of deliberations.

My point is not that this will happen, or that such an argument by the state will prevail if presented. My point is simply that we ought to wait until some new language is used by a trial court and briefed by the parties on appeal, and then adjudicate its propriety in the context of the case, rather than approve language without briefing, in a vacuum, and in advance of its use.